LEONARD H. SCHWARTZ and CAROL A. SCHWARTZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; HERBERT GLICKMAN and CAROLE GLICKMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schwartz v. Commissioner
Docket Nos. 14482-82, 20783-82.
United States Tax Court
T.C. Memo 1984-35; 1984 Tax Ct. Memo LEXIS 638; 47 T.C.M. (CCH) 937; T.C.M. (RIA) 84035; January 18, 1984. *638 Ps were limited partners in a partnership formed to acquire and distribute a motion picture film. For 1975 and 1976, the partnership reported no income from the distribution of the film but claimed large deductions for depreciation. The Commissioner moved for a partial summary judgment on the ground that the partnership was not entitled to any depreciation deductions since it had no income for those years. Ps now claim that the partnership did receive income for such years. Held, Ps' allegations fail to set forth "specific facts" showing that the partnership did receive income reportable for 1975 and 1976. Mere denials of the moving party's allegations or restatements of a party's own allegations are insufficient to defeat a motion for summary judgment. William D. Hecht and Arthur Pelikow, for the petitioners. Anne Hintermeister and Arthur J. Gonzalez, for the respondent. SIMPSON
MEMORANDUM OPINION SIMPSON, Judge: This matter is before the Court on the Commissioner's motion for partial summary judgment pursuant to Rule 121, Tax Court Rules of Practice and Procedure.[1] The sole issue raised by the motion is whether Meadowview Associates (Meadowview) is entitled to depreciation *639 deductions for 1975 and 1976 under the income forecast method for computing allowable depreciation with respect to motion picture films. The Commissioner determined the following deficiencies in the petitioners' Federal income taxes: Petitioner
Year
Deficiency
Leonard H. and Carol
1975
$24,706.06
A. Schwartz
1976
7,860.00
Herbert and Carole
1975
[2] 29,069.11
Glickman The petitioners, Leonard H. and Carol A. Schwartz, husband and wife, maintained their legal residence in Miami Beach, Fla., during the years in issue; they filed their joint Federal income tax returns for 1975 and 1976 with the Internal Revenue Service Center, Chamblee, Ga. The petitioners, Herbert and Carole Glickman, husband and wife, resided in Hewlett Harbor, N.Y., at the time they filed their petition in this case; they filed their joint Federal income tax return for 1975 with the Internal Revenue *640 Service Center, Holtsville, N.Y.
In 1975 and 1976, Mr. Schwartz was a limited partner of Meadowview, and in 1975, Mrs. Glickman was also a limited partner of Meadowview. Meadowview was formed on May 15, 1975, as a New York limited partnership. On May 20, 1975, Meadowview purchased certain rights in a motion picture entitled "Jury of One" (also known as "The Verdict") (the film). On its 1975 and 1976 returns, Meadowview listed the cost of the film as $2,700,000. In May 1975, Meadowview entered into a 15-year distribution agreement with Avco Embassy Pictures Corp. (Avco) whereby the film would be distributed in the United States, its possessions and territories, and English-speaking Chanada. Such agreement covered both theatrical and television distribution. Under the agreement, Avco was to retain 50 percent of the gross receipts from theater showings of the film. In addition, Avco was to retain 25 percent of the gross receipts from network television and 35 percent of the gross receipts from other television distribution. Under the agreement, theatrical gross receipts consisted of gross receipts less certain theatrical distribution expenses incurred by Avco. Avco was also entitled *641 to deduct certain television distribution expenses from Meadowview's share of the television gross receipts. Under the distribution agreement, Avco was required to furnish Meadowview with periodic statements of its receipts and expenses with respect to the film. A statement was to be rendered 60 days after the end of the period to which it related. Avco was not reguired to provide a statement for any period during which it received no rentals. The agreement further provided that amounts due from Avco to Meadowview pursuant to a statement were to be paid to Meadowview simultaneously with the rendering of the statement. Meadowview filed returns on a calendar year basis for 1975 and 1976. On its returns, Meadowview reported the following amounts of income and depreciation deductions: Year
Interest
Depreciation
1975
$584
$1,325,000
1976
450
530,000
The partnership returns reported the following amounts as the petitioners' individual shares of the partnership's ordinary losses: Partner
Year
Ordinary Loss
Leonard H. Schwartz
1975
$34,565
1976
12,981
Carole Glickman
1975
34,565
On their Federal income tax returns for 1975 and 1976, the petitioners claimed deductions for the losses attributable to the operation *642 of Meadowview. Such losses resulted from the depreciation deductions claimed by Meadowview in 1975 and 1976 and from certain other partnership expenses. In his notices of deficiency, the Commissioner determined that Meadowview was not entitled to such depreciation and disallowed the deductions claimed by the petitioners. A motion for summary judgment is a device used to expedite litigation and is intended to avoid unnecessary and expensive trials of "phantom factual questions." Cox v. American Fidelity " Casualty Co.,249 F.2d 616, 618 (9th Cir. 1957); Espinoza v. Commissioner,78 T.C. 412, 416 (1982). However, summary judgment is not a substitute for a trial in that disputes over factual issues are not to be resolved in such proceedings. Matson Navigation Co. v. Commissioner,67 T.C. 938, 951 (1977); Giordano v. Commissioner,63 T.C. 462, 463 (1975). Thus, in considering a motion for summary judgment, the Court must decide whether there are any factual issues to be tried. Espinoza v. Commissioner,78 T.C. at 416; Hoeme v. Commissioner,63 T.C. 18, 20 (1974). A motion for summary judgment is granted only when it is shown that "there is no genuine issue as to any material fact *643 and that a decision may be rendered as a matter of law." Rule 121(b). Since the granting of a summary judgment motion is to decide an issue against a party without allowing him an opportunity for a trial, such action has been frequently called a "drastic remedy" to be cautiously invoked and used sparingly after a careful consideration of the case reveals that the requirements have clearly been met. See Associated Press v. United States,326 U.S. 1, 6 (1945); Flli Moretti Cereali v. Continental Grain Co.,563 F.2d 563, 565 (2d Cir. 1977); United States v. Bosurgi,530 F.2d 1105, 1110 (2d Cir. 1976). The party moving for summary judgment has the burden of showing the absence of a genuine issue as to any material fact. Adickes v. Kress & Co.,398 U.S. 144, 158-161 (1970); Espinoza v. Commissioner,78 T.C. at 416. The opposing party is to be afforded the benefit of all reasonable doubt, and any inference to be drawn from the underlying facts contained in the record must be viewed in a light most favcoable to the party opposing the motion for summary judgment. See United States v. Diebold, Inc.,369 U.S. 654, 655 (1962); American Mfrs. M.I. Co. v. American Broadcasting-Para. Th.,388 F.2d 272, 279 (2d Cir. 1967). *644 However, under Rule 121(d): When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, a decision, if appropriate, may be entered against him. Thus, mere denials of the moving party's allegations or restatements of a party's own allegations are insufficient to defeat a motion for summary judgment. Adickes v. Kress & Co.,398 U.S. at 158-161; 6 Pt. 2 J. Moore and J. Wicker, Moore's Federal Practice, par. 56.22[2] (2d ed. 1982). "The affidavit is no place for ultimate facts and conclusions of law, nor for argument of the party's cause." 6 Pt. 2 J. Moore and J. Wicker, supra, par. 56.22[1] at 56-1316 - 56-1317 (fn. refs. omitted). Section 167(a) of the Internal Revenue Code of 1954[3] provides that a taxpayer shall be allowed, as a depreciation deduction, a reasonable allowance for the exhaustion of property used in a trade or business. "Depreciation is an accounting device which recognizes that the physical *645 consumption of a capital asset is a true cost, since the asset is being depleted." Commissioner v. Idaho Power Co.,418 U.S. 1, 10 (1974) (fn. ref. omitted). "[I]t is the primary purpose of depreciation accounting to further the integrity of periodic income statements by making a meaningful allocation of the cost entailed in the use (excluding maintenance expense) of the asset to the periods to which it contributes." Massey Motors, Inc. v. United States,364 U.S. 92, 104 (1960). In Rev. Rul. 64-273, 1964-2 C.B. 62, amplifying Rev. Rul. 60-358, 1960-2 C.B. 68, the Commissioner authorized the use of the income forecast method to compute depreciation with respect to motion picture films. Rev. Rul. 60-358, which describes the income forecast method, provides, in part: This method requires the application of a fraction, the numerator of which is the income from the films for the taxable year, and the denominator of which is the forecasted or estimated total income to be derived from the films during their useful life, including estimated income from foreign exhibition or other exploitation *646 of such films. The term "income" for purposes of computing this fraction means income from the films less the expense of distributing the films, not including depreciation. This fraction is multiplied by the cost of films which produced income during the taxable year, after appropriate adjustment for estimated salvage value. * * * [1960-2 C.B. at 68-69.] In numerous cases, this Court has upheld the use of the income forecast method to compute depreciation for motion picture films. Fife v. Commissioner, 82 T.C.    ,     (Jan. 4, 1984) (slip opinion at 11); Greene v. Commissioner,81 T.C. 132, 136 (1983); Wildman v. Commissioner,78 T.C. 943, 950 (1982); Siegel v. Commissioner,78 T.C. 659, 692 (1982). In his motion for partial summary judgment, the Commissioner asserts that during the years in issue, Meadowview used the cash method of accounting and that it used the income forecast method to compute depreciation on the film. He takes the position that since Meadowview received no income from the film during 1975 and 1976, it was not entitled to any depreciation deductions for those years and that such result is required as a matter of law. Therefore, he urges us to grant his motion *647 for partial summary judgment and hold that the petitioners are not entitled to any deductions for losses attributable to dereciation claimed by the partnership for 1975 and 1976. In opposition to the Commissioner's motion, the petitioners argue that such motion should not be granted because there are material and substantial questions of fact which necessitate a trial. They assert that the partnership's income tax returns for 1975 and 1976 do not indicate the method of accounting used and that therefore a question of fact exists as to the partnership's method of accounting. They further argue that: 4. Meadowview actually or constructively received gross income from theater and television receipts duing 1975 and 1976, irrespective of the legal relationship between Avco and Meadowview, i.e., whether Avco was the agent of the partnership or was an independent contractor. * * * 5. Since gross income from theatrical and television receipts was generated and reportable under either the cash or accrual method of accounting during 1975 and 1976, depreciation deductions would be allowable to Meadowview under the income forecast method of depreciation, assuming that this method was elected *648 by Meadowview. Initially, we address the petitioners' apparent confusion over whether Meadowview elected to use the income forecast method. Meadowview's 1975 and 1976 tax returns both state that the partnership used the income forecast method to compute depreciation. Additionally, we have previously held that once a taxpayer has elected to use the income forecast method, it may not change its method without requesting and securing the approval of the Commissioner. Greene v. Commissioner,81 T.C. at 140; Wildman v. Commissioner,78 T.C. at 952-953. [4] Hence, we find that Meadowview had elected and was required to use the income forecast method for computing depreciation for the years 1975 and 1976. We now turn to the petitioners' primary argument that the partnership had gross income "generated and reportable under either the cash or accrual method of accounting during 1975 and 1976" and that a trial is necessary to establish its method of accounting and the amount of its income. In support of such contention, the petitioners have submitted the affidavit of Richard Petrucci, a general partner *649 in Meadowview. In his affidavit, Mr. Petrucci alleges that: Meadowview's share of gross receipts in 1975 and 1976 was reportable under its method of accounting, whether the cash or accrual method was used for reporting income and expenses: If on the cash basis, the gross income was constructively received, alternatively, under the accrual method, all the events for reporting the income had occurred. In support of such allegations, there are attached to Mr. Petrucci's affidavit five statements from Avco showing the cumulative gross receipts from theater and television distribution from December 1975 through December 31, 1976. The first three statements show that Avco's distribution expenses exceeded gross receipts from december 1975 through October 31, 1976, and that no payments were due Meadowview. The fourth statement, covering the period through November 30, 1976, shows that Meadowview's share of amounts received by Avco for television distribution was $15,950. Such statement also shows that Meadowview's share of the proceeds from film distribution was still zero. The fifth statement, covering the period through December 31, 1976, shows a balance due to Meadowview from film *650 distribution proceeds of $5,372 and no further amounts due from television distribution. The letters from Avco to Meadowview, which accompanied statements four and five, are both dated February 23, 1977, and indicate that the payments to Meadowview were made at that time. There is no merit in the petitioners' contention that a trial is necessary to establish the method of accounting used by Meadowview. From the record presented to us, it appears that during 1975 and 1976, Meadowview received no payments from Avco representing its share of the proceeds from the distribution of the film, and on its returns for those years, the partnership reported no income from the distribution of the film. Thus, Meadowview used the cash method in reporting its income. The Commissioner treated the partnership as using the cash method of accounting since his agent who examined the books and records of Meadowview found that the partnership was reporting income when received and claiming deductions for items when paid. The mere suggestion that the partnership may have used the accrual method is not sufficient to defeat a motion for partial summary judgment; the petitioners have furnished no "specific *651 facts" showing that it used the accrual method and that therefore there is an issue to be tried. Rule 121(d); see First National Bank v. Cities Service Co.,391 U.S. 253, 288-290 (1968); Sound Ship Building Corp. v. Bethlehem Steel Co.,533 F.2d 96, 99-100 (3d Cir. 1976); Lyons v. Board of Education,523 F.2d 340, 346-347 (8th Cir. 1975); Markwell v. General Tire and Rubber Co.,367 F.2d 748, 750 (7th Cir. 1966). Nor have the petitioners shown that there is a need for a trial to establish the amount of distribution income received by Meadowview in 1975 and 1976. In the first place, it is clear that under no theory did Meadowview receive any distribution income in 1975. The statements furnished by Avco to Meadowview show distribution expenses exceeded distribution income in 1975 and that therefore Meadowview was entitled to no net income from the distribution of the film for that year. When a taxpayer elects to use the income forecast method, he is required to use net income in the numerator of the fraction. Greene v. Commissioner,81 T.C. at 140. Since it is clear that Meadowview received no net income from the distribution of the film in 1975, it is also clear that it was not *652 entitled to any depreciation for the film for that year. Fife v. Commissioner, 82 T.C. at     (slip opinion at 12-13); Greene v. Commissioner,81 T.C. at 140; Wildman v. Commissioner,78 T.C. at 951; Siegel v. Commissioner,78 T.C. at 693. In addition, the petitioners have failed to produce "Specific facts" indicating the need for a trial to establish Meadowview's share of distribution income in 1976. The fourth and fifth statements furnished by Avco to Meadowview do show that the receipts in November and December of 1976 exceeded the expenses. However, the net income was not payable to Meadowview until 1977, and such income was, in fact, not paid until that year. Although the petitioners assert that Meadowview constructively received such income in 1976, such assertion is not supported by any "specific facts" and appears to be contrary to the facts of record in the case. Under the distribution agreement, Avco was not required to pay such net income to Meadowview until it submitted the report, and such report was not required to be submitted until 60 days after the period covered by it. There is no evidence tending to indicate that Meadowview had any right to demand payment earlier. *653 See sec. 1.451-2, Income Tax Regs. (constructive receipt of income). The petitioners have raised mere "phantom facts" in their attempt to defeat the Commissioner's motion for partial summary judgment, and such a motion cannot be defeated by such phantoms. [5] Accordingly, we find that the Commissioner has met his burden of showing the absence of a genuine issue as to any material fact. We hold that the petitioners are not entitled to deduct any partnership losses for 1975 and 1976 attributable to depreciation claimed on the film for those years, and we will grant the Commissioner's motion for partial summary judgment. An appropriate order will be issued.
Footnotes
1. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩
2. In his brief, the Commissioner states that the deficiency in docket No. 20783-82 resulted from a disallowance of $35,565; the Commissioner has conceded that only $34,565 should be disallowed as a result of the disallowance of Meadowview's depreciation deduction.↩
3. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
4. Tarricone v. Commissioner,T.C. Memo. 1983-674; Bizub v. Commissioner,T.C. Memo. 1983-280↩.
5. The petitioners have not sought to avail themselves of the procedures provided for in Rule 121(e). Rule 121(e), in part, provides: Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the Court may deny the motion or may order a continuance to permit affidavits to be obtained or other steps to be taken or may make such other order as is just. * * *↩