**O'BRYAN BROS., Inc., et al. v. COMMIS-SIONER OF INTERNAL REVENUE.**

**No. 8950.**

Circuit Court of Appeals, Sixth Circuit.

April 16, 1942.

Cecil Sims, of Nashville, Tenn. (Bass, Berry & Sims, of Nashville, Tenn., on the brief), for petitioners.

Carlton Fox, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Carlton Fox, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SIMONS, ALLEN, and McAL-LISTER, Circuit Judges.

ALLEN, Circuit Judge.

This petition to review decisions of the Board of Tax Appeals (42 B.T.A. 18) arises out of two cases consolidated for hearing and decision. The question presented in the case of petitioner O'Bryan Brothers, Inc., is whether the disallowance by the Commissioner of a deduction for a bad debt, made in the computation of income and excess profits taxes for the calendar year 1933, is shown to be improper. The questions presented in the case of petitioner T. P. Kennedy, Sr., are whether the Board erred (1) in valuing certain stock at $150 per share for purposes of gift tax, and (2) in holding that the gift tax assessment is not barred by the statute of limitations.

For several years prior to 1933 T. P. Kennedy, Sr., was president and majority stockholder of O'Bryan Brothers, Inc., a Tennessee corporation, owning 1,308 of the 1,500 shares of common stock. He maintained an open account with O'Bryan Brothers from 1919 until the early part of 1932, under which O'Bryan Brothers paid many of his personal bills, such as taxes, insurance premiums, charitable contributions, etc. Kennedy, Sr. also drew large sums of money for the purchase of common stock of the corporation. At the end of 1932 Kennedy, Sr.'s debit balance in his main personal account was $206,011.51, and in two other accounts upon O'Bryan Brothers' books an additional $2,555.69. No notes were given for the sums so withdrawn and no interest thereon was charged to Kennedy, Sr., on the corporation books.

During 1930 and 1931 O'Bryan Brothers suffered heavy losses and at the end of 1931 it owed the American National Bank of Nashville approximately $145,000. When an audit disclosed Kennedy, Sr.'s indebtedness of $208,000 to the corporation, the bank insisted that it be secured. Thereupon Kennedy, Sr., executed a thirty-day promissory note in the amount of $204,007.56 to O'Bryan Brothers, and as collateral therefor pledged his entire holding of common stock in O'Bryan Brothers and executed and delivered a deed of trust upon certain real property owned by him, appraised at $35,000. Kennedy, Sr.'s note and the collateral were at once assigned to the bank as security for O'Bryan Brothers' debt to the bank. No attempt was made by O'Bryan Brothers to collect the note and it was not entered upon the corporate books.

In March, 1932, the bank, as O'Bryan Brothers' largest creditor, assumed management of its affairs, subordinated its own claim and guaranteed the payment of other creditors. Later Kennedy, Sr., who was in ill health, was removed as president and employed as a salesman at $300 per month, while his son, T. P. Kennedy, Jr., who had been one of the vice-presidents and manager of production, assumed management of the corporation. In November of the same year Kennedy, Jr., was made president at the instance of the bank, which also suggested that he be given fifty-one per cent of the common stock of the corporation as an inducement to continue in the management. This proposition was contingent upon the consent of O'Bryan Brothers to the release of the stock as security. On June 5, 1933, 751 shares of common stock belonging to Kennedy, Sr., were issued to Kennedy, Jr., with the consent of Kennedy, Sr., the bank, and O'Bryan Brothers, which then wrote down the indebtedness of Kennedy, Sr., to $70,000, charged off upon its books the balance of $138,567 as a bad debt and claimed a deduction of this amount in its income and excess profits tax return for 1933.

The Board of Tax Appeals sustained the Commissioner in disallowing this deduction, upon the ground that the corporation voluntarily relinquished collateral securing the indebtedness, thereby contributing to the partial worthlessness thereof.

■ We think this decision is correct. Assuming, as found by the Board, that the common stock held as collateral was worth $150 per share, the value of the collateral exceeded the indebtedness of Kennedy, Sr., to the corporation. A taxpayer may not of its own act render a collectible debt uncollectible, charge off the debt as worthless, and then deduct it from income for purposes of taxation. American Felt Co. v. Burnet, 61 App.D.C. 125, 58 F.2d 530. Nor may a taxpayer voluntarily surrender property given it by a solvent debtor as security to protect the taxpayer from loss on an indebtedness and deduct the debt as worthless under § 23(j) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 490. The instant case is distinguished from Deeds v. Commissioner, 6 Cir., 47 F.2d 695, because it is not shown here, as was the case there, that the debtor was insolvent in the first instance and the debt uncollectible because of such insolvency. Johnson, Drake & Piper v. Helvering, 8 Cir., 69 F. 2d 151, 155, 156, certiorari denied 292 U.S. 650, 54 S.Ct. 860, 78 L.Ed. 1500; Stranahan v. Commissioner, 6 Cir., 42 F.2d 729, 732, certiorari denied 283 U.S. 822, 51 S. Ct. 346, 75 L.Ed. 1437. Cf. Taylor v. Commissioner, 6 Cir., 95 F.2d 1018; Selden v. Heiner, D.C.Pa., 12 F.2d 474. As owner of 1,308 shares of stock in this going concern, Kennedy, Sr., was far from insolvent at the time of this transaction, his note was not shown to be uncollectible, and the collateral clearly had substantial value.

■ The Board's finding that the common stock of O'Bryan Brothers given to Kennedy, Jr., by Kennedy, Sr., had a value of $150 per share, is attacked by both petitioners. While the only direct testimony upon this point is that of Kennedy, Jr., who said that the stock had no market value, could not have been sold for any price at the end of 1933, and was worth about $70 if the corporation had been liquidated, there is substantial evidence in the record supporting the Board's conclusion. During the period from 1919 up to and including 1928, the common stock paid dividends of five to ten per cent annually. Preferred dividends of eight per cent were paid during 1919 to 1931, inclusive. During the same period Kennedy, Sr., withdrew approximately $200,000 from corporate earnings. While O'Bryan Brothers' tax returns show a loss of $60,000 for 1931, they show a profit of some $11,000 for 1932, and approximately $82,000 for 1933 if the debt charged off is not considered. The book value of the common stock as of December 31 for 1931, 1932, and 1933, was $159.27, $166.25, and $128.95 per share respectively.

Prior to 1931 Kennedy, Sr., received as much as $35,000 a year in salary and bonus from the corporation. In view of the demonstrated earning power of the stock, we conclude that the valuation of $70 per share, given by Kennedy, Jr., was considerably underestimated and that neither petitioner has borne the burden of demonstrating that the finding of the Commissioner, which was sustained by the Board, is incorrect.

Nor do we find any merit in the contention that assessment of the gift tax is barred by the statute of limitations. This contention arises out of the fact that Kennedy, Sr., filed his gift tax return June 15, 1934, with the internal revenue agent in charge, and after certain office communications and conferences, the return was received by the collector of internal revenue for the district of Tennessee August 7, 1934. The notice of deficiency was dated June 16, 1937, and as the three-year statute of limitations, § 517(a), Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 596, controls, if the first date (June 15, 1934) meets the requirements of the statute, the assessment of the tax is barred. However, the express provision covering this point is that returns shall be filed "with the collector for the district in which is located the legal residence of the donor." Section 507(b), Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 588. It was the duty of the taxpayer under this statute to file the return with the collector of the district. It was not the duty of the internal revenue agent in charge to file a return for the taxpayer. W. H. Hill Co. v. Commissioner, 6 Cir., 64 F.2d 506, certiorari denied 290 U. S. 691, 54 S.Ct. 126, 78 L.Ed. 595.

The decisions are affirmed.