FRANCISCO T. ESPINOZA, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 10562–80.    Filed March 16, 1982.

*William E. Frantz* and *Clarence H. Glover, Jr.,* for the
petitioner.

*Lourdes M. DeSantis* and *Donald W. Williamson, Jr.,* for the
respondent.

## OPINION

SIMPSON, *Judge*: The Commissioner determined deficiencies
in the petitioner's Federal income taxes for 1971 through 1974
and additions to tax for each year under section 6653(b) of the
Internal Revenue Code of 1954.[1] The petitioner has made a
timely motion for summary judgment pursuant to Rule 121,
Tax Court Rules of Practice and Procedure,[2] wherein he seeks
to establish that the statute of limitations bars the assessment
and collection of such deficiencies and additions to tax.

The petitioner, Francisco T. Espinoza, was a legal resident of
Marietta, Ga., at the time he filed his petition in this case. He
filed his original individual Federal income tax returns for
1971 through 1974 with the Internal Revenue Service Center,
Chamblee, Ga.

---

[1]All statutory references are to the Internal Revenue Code of 1954 as in effect during
1976, unless otherwise indicated.

[2]All references to a Rule are to the Tax Court Rules of Practice and Procedure, unless
otherwise indicated.

The petitioner is a physician, and he reported the following amounts on his original returns for 1971 through 1974:

| Year | Professional income | Professional expense | Net professional income | AGI | Tax due |
|---|---|---|---|---|---|
| 1971 | $26,215.77 | $17,562.32 | $8,653.45 | $8,653.45 | $642.95 |
| 1972 | 27,445.25 | 20,715.32 | 6,729.93 | 6,729.93 | 504.74 |
| 1973 | 28,425.00 | 23,150.26 | 5,274.74 | 5,288.63 | 421.98 |
| 1974 | 35,168.00 | 24,829.75 | 10,338.25 | 10,338.25 | 816.72 |
| Total | 117,254.02 | 86,257.65 | 30,996.37 | 31,010.26 | 2,386.39 |

In the early part of 1976, Revenue Agent Michael Rosser was assigned the investigation of Dr. Espinoza's Federal income tax liability. In connection with such investigation, the agent mailed a letter to the petitioner on March 29, 1976, informing him that an audit was being conducted of his Federal income tax return for 1974. Subsequently, the agent received a telephone call from the attorney then representing the petitioner, and a conference was scheduled to be held at the office of the accountant for Dr. Espinoza. On June 21, 1976, at the beginning of the conference, the attorney handed the revenue agent a letter signed by Dr. Espinoza transmitting four documents stamped "amended return" for 1971 through 1974. These documents were prepared by the accountant.

The transmittal letter was addressed to the IRS at Franklin Square Office Park in Marietta and read:

Dear Sir:

I am filing amended U.S. individual income tax returns for the following years with balance due Internal Revenue Service as listed:

| | Amended Return |
|---|---|
| 1971 | $5,871.19 |
| 1972 | 4,380.89 |
| 1973 | 11,872.85 |
| 1974 | 16,457.77 |
| | $38,582.70 |

Please acknowledge receipt of the above returns by affixing your receiving stamp on the enclosed copy of this letter, or indicate receipt by you in a similar manner.

Yours very truly,
(S)Francisco T. Espinoza
FRANCISCO T. ESPINOZA
513–44–5779

No payments accompanied the letter. The agent acknowledged receipt of such letter and returns by signing a copy of the letter. After the conference, the agent returned to his office, and the documents were stamped as "Received" by the Audit Division, Marietta, Ga., on June 21, 1976. On June 23, 1976, the agent forwarded these amended returns directly to the Intelligence Division in Atlanta, Ga. Such amended returns reported the following amounts:

| Year | Professional income | Professional expenses | Net professional income | AGI | Tax due |
|------|------|------|------|------|------|
| 1971 | $55,410.80 | $20,711.81 | $34,698.99 | $34,870.43 | $6,514.14 |
| 1972 | 55,584.83 | 24,333.60 | 31,251.23 | 31,117.31 | 4,885.63 |
| 1973 | 78,713.40 | 27,207.78 | 51,505.62 | 50,945.25 | 12,294.83 |
| 1974 | 80,045.61 | 25,938.19 | 54,107.42 | 52,936.06 | 17,274.49 |
| Total | 269,754.64 | 98,191.38 | 171,563.26 | 169,869.05 | 40,969.09 |

The amended returns were not forwarded to the Service Center and were not assigned document locator numbers. The individual master file records maintained by the Atlanta Service Center contain no record of any amended tax returns having been filed in the petitioner's name for 1971 through 1974. The additional taxes due on the amended returns were never assessed, and the certificate of assessments reveals that the petitioner never paid any additional taxes for the years 1971 through 1974 based on the submission of such amended returns.

The Intelligence Division conducted an independent investigation of Dr. Espinoza's tax liability for the years 1971 through 1974. His income was computed on the basis of a bank deposit analysis, and many third parties were interviewed. After the Intelligence Division completed its investigation, Dr. Espinoza was indicted by the grand jury in the U.S. District Court for the Northern District of Georgia, Atlanta Division, on four counts of willfully and knowingly attempting to evade and defeat a large part of his income taxes for 1971 through 1974 in violation of section 7201. On June 27, 1978, he was acquitted of such charges after a jury trial. In September 1978, the Intelligence Division closed its case involving Dr. Espinoza

and referred the matter to the Chief of the Examination Division for purposes of a civil examination.

The records of the IRS contain a consent (Form 872) to extend the statute of limitations for 1972 until April 15, 1980. Such consent was executed by the petitioner on March 1, 1979, and by the IRS on March 9, 1979.

On March 31, 1980, the Commissioner issued his notice of deficiency. In such notice, he determined that Dr. Espinoza had received the following amounts of net income from self-employment for the years 1971 through 1974 and that he was liable for the following amounts of deficiencies in income taxes and additions to tax under section 6653(b) for such years:

| Year | Net income | Deficiency | Addition to tax |
|------|-----------|-----------|-----------------|
| 1971 | $25,258.78 | $2,567.68 | $1,283.84 |
| 1972 | 27,915.73 | 3,307.94 | 1,653.97 |
| 1973 | 48,471.32 | 9,942.02 | 4,971.01 |
| 1974 | 47,563.01 | 13,732.14 | 6,866.07 |

In his motion for summary judgment, the petitioner claims that the Commissioner's proposed deficiencies for 1971 through 1974 are barred by the statute of limitations. For the limited purposes of this motion, Dr. Espinoza has conceded that his original returns were fraudulent. He takes the position that on June 21, 1976, he filed nonfraudulent amended returns and that the filing of such amended returns started the running of the 3-year period of limitations under section 6501(a). Since the notice of deficiency was issued more than 3 years after the filing of such returns, he argues that it was untimely. In opposition, the Commissioner asserts that such notice was timely under section 6501(c) since the original returns were fraudulent and since the purported amended returns were never in fact "filed" so as to commence the running of any period of limitations. He also claims that the petitioner executed a consent extending to April 15, 1980, the period for assessing any deficiency for 1972. For these reasons, he maintains that there are material issues of fact so that the motion for summary judgment should not be granted.

Summary judgment under Rule 121 is derived from rule 56 of the Federal Rules of Civil Procedure. Hence, in any question turning on the interpretation of Rule 121, the history of rule 56, Federal Rules of Civil Procedure, and the authorities

interpreting such rule are considered by the Tax Court. See *Hoeme v. Commissioner,* 63 T.C. 18 (1974); *Shiosaki v. Commissioner,* 61 T.C. 861 (1974).

Summary judgment is a device used to expedite litigation and is intended to avoid unnecessary and expensive trials of "phantom factual questions." *Cox v. American Fidelity & Casualty Co.,* 249 F.2d 616, 618 (9th Cir. 1957); *Shiosaki v. Commissioner, supra.* However, summary judgment is not a substitute for a trial in that disputes over factual issues are not to be resolved in such proceedings. *Matson Navigation Co. v. Commissioner,* 67 T.C. 938 (1977); *Giordano v. Commissioner,* 63 T.C. 462 (1975). Thus, in considering a motion for summary judgment, the Court must decide whether there are any factual issues to be tried. *Hoeme v. Commissioner, supra; Vickery v. Fisher Governor Co.,* 417 F.2d 466 (9th Cir. 1969); *Byrnes v. Mutual Life Insurance Co. of N.Y.,* 217 F.2d 497 (9th Cir. 1954).

A motion for summary judgment is granted only when it is shown that "there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). Since the granting of a summary judgment motion is to decide an issue against a party without allowing him an opportunity for a trial, such action has been frequently called a "drastic remedy" to be cautiously invoked and used sparingly after a careful consideration of the case reveals that the requirements have clearly been met. See *Associated Press v. United States,* 326 U.S. 1, 6 (1945); *Flli Moretti Cereali v. Continental Grain Co.,* 563 F.2d 563 (2d Cir. 1977); *United States v. Bosurgi,* 530 F.2d 1105 (2d Cir. 1976).

The party moving for summary judgment has the burden of showing the absence of a genuine issue as to any material fact. *Weinberger v. Hynson, Westcott & Dunning,* 412 U.S. 609, 621–622 (1973); *Adickes v. Kress & Co.,* 398 U.S. 144, 158–159 (1970). The opposing party is to be afforded the benefit of all reasonable doubt, and any inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion for summary judgment. See *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *American Mfrs. M. I. Co. v. American Broadcasting-Para. Th.,* 388 F.2d 272, 279 (2d Cir. 1967); 10 C. Wright & A. Miller, Federal Practice and Procedure: Civil, sec.

2725 (1973), and cases cited therein. Ordinarily, summary judgment should not be granted in a case in which intent is an issue. *Hoeme v. Commissioner, supra; Shiosaki v. Commissioner, supra.* Summary judgment is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive and intent; such inferences of fact are to be drawn only at trial. See *Cross v. United States,* 336 F.2d 431, 433 (2d Cir. 1964).

We consider first the question of whether the petitioner filed amended returns that started the running of the 3-year period of limitations. Section 6501(a) sets out the general rule of limitations on assessment and provides, in part:

Except as otherwise provided in this section, the amount of any tax * * * shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * *

Section 6501(c) contains a number of exceptions to this general rule, including the provisions of paragraph (1) that:

In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax, may be begun without assessment, at any time.

Section 6501(e) sets forth another exception and provides, in part:

SEC. 6501(e). SUBSTANTIAL OMISSION OF ITEMS.—Except as otherwise provided in subsection (c)—

    (1) INCOME TAXES.—In the case of any tax imposed by subtitle A—

      (A) GENERAL RULE.—If the taxpayer omits from gross income an amount properly includable therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such may be begun without assessment, at any time within 6 years after the return was filed. * * *

This issue was recently dealt with by this Court in *Klemp v. Commissioner,* 77 T.C. 201 (1981), on appeal (9th Cir., Nov. 2, 1981). In that case, the petitioners had also filed a motion for summary judgment. For purposes of such motion, it was stipulated that the petitioners had originally filed fraudulent returns and that they had later filed nonfraudulent amended returns. It was also stipulated that in the original returns, there was an omission of more than 25 percent of the income reported on the returns. We held that the filing of the nonfraudulent amended returns started the running of the 3-

year period of limitations and that since the notice of deficiency had not been issued until after the expiration of such period, we granted the motion for summary judgment. We reasoned that since the amended returns were not fraudulent, there was no basis for allowing the Commissioner an unlimited period to audit the returns and determine a deficiency. We also concluded that since the original returns were fraudulent, they were to be disregarded and that therefore they did not start the running of the 6-year period of limitations under section 6501(e). See also *Dowell v. Commissioner*, 614 F.2d 1263 (10th Cir. 1980), revg. 68 T.C. 646 (1977).[3]

In the case now before us, the facts concerning the filing of the amended returns are materially different from those in *Klemp* and *Dowell*. In *Klemp*, the amended returns were also handed to the IRS agent; but, there, the parties stipulated that the amended returns were filed, and the deficiencies were based on the amended returns. 77 T.C. at 201 n. 2. In *Klemp*, there was no doubt that the petitioners in good faith intended to have the documents filed as amended returns. In *Dowell*, the amended returns were properly filed, except that two of them were not properly signed. The court concluded that since the IRS had accepted the returns and relied on them in both the criminal and civil cases, the IRS was in no position to claim that the unsigned returns did not start the running of the statute of limitations on assessment. 614 F.2d at 1267. In the present case, there is a substantial question as to whether the amended returns were filed.

Section 6501 does not define the word "filed." However, the statutory requirements for filing returns are contained in section 6091. In general, section 6091(b)(1)(A) provides that a return of persons other than corporations shall be made to the Secretary:

(i) in the internal revenue district in which is located the legal residence or principal place of business of the person making the return, or
(ii) at a service center serving the internal revenue district referred to in clause (i), as the Secretary may by regulations designate.

---

[3]For recent cases applying the *Klemp* rationale, see *Nesmith v. Commissioner*, T.C. Memo. 1981–561; *Badaracco v. Commissioner*, T.C. Memo. 1981–404, on appeal (3d Cir., Nov. 6, 1981); *Britton v. United States*, 532 F. Supp. 275 (D. Vt. 1981, 49 AFTR 2d 82–471, 81–2 USTC par. 9739); *Deleet Merchandising Corp. v. United States*, 535 F. Supp. 402 (D. N.J. 1981, ___ AFTR 2d ___ , 82–1 USTC par. 9184).

Section 6091(b)(4) provides that when a tax return of an individual is hand carried, it shall be made in accordance with section 6091(b)(1)(A)(i).

The regulations under section 6091 contain additional rules for the filing of tax returns. Section 1.6091–2(a)(1), Income Tax Regs., states, in part, that:

income tax returns of individuals * * * shall be filed with the district director for the internal revenue district in which is located the legal residence * * * of the person required to make the return * * *

However, paragraph (c) of such section provides, in part, that:

whenever instructions applicable to income tax returns provide that the returns be filed with a service center, the returns must be so filed in accordance with the instructions.

In 1976, paragraph (d)(1) of such section added that:

Returns of persons other than corporations which are filed by hand carrying shall be filed with the district director as provided in paragraph (a) of this section.[4]

Under paragraph (e) of such section, amended returns that are not hand carried are to be filed with a Service Center. Section 301.6091–1(c), Proced. & Admin. Regs., defines hand carrying in the following manner:

a return or document will be considered to be hand carried if it is brought to the district director by the person required to file the return or other document, or by his agent. * * *

Thus, an analysis of these provisions of section 6091 and the regulations thereunder indicates that hand carried amended returns are to be filed with the District Director.

In *Lucas v. Pilliod Lumber Co.*, 281 U.S. 245, 249 (1930), the Supreme Court declared that "meticulous compliance by the taxpayer with all named conditions" is necessary to start the running of a statute of limitations on assessment. See also *Florsheim Bros. Dry Goods Co. v. United States*, 280 U.S. 453 (1930). In addition, it has been held that the hand delivery of a

---

[4]Such regulation was amended in 1977 by T.D. 7495, 1977–2 C.B. 469, to insert after the words "district director" the following parenthetical phrase: "(or with any person assigned the administrative supervision of an area, zone or local office constituting a permanent post of duty within the internal revenue district of such director)." Such amendment was not applicable at the time of the alleged filing of the amended returns in this case, and in any event, the revenue agent is not such an official.

return to an IRS agent does not constitute the filing of a return. See *W. H. Hill Co. v. Commissioner*, 64 F.2d 506 (6th Cir. 1933), affg. 23 B.T.A. 605 (1931); *O'Bryan Bros. v. Commissioner*, 127 F.2d 645 (6th Cir. 1942), affg. 42 B.T.A. 18 (1940).[5]

In *W. H. Hill Co.*, the taxpayer changed from a calendar year to a fiscal year basis for filling its tax returns, but in making the change, there was a 3-month period ending March 31, 1920, for which no return was filed. Upon a subsequent audit, a revenue agent discovered the error and prepared an amended return covering such period. The corporate officers signed such return, and the agent promised the officers that he would attend to the filing. The agent forwarded such return, along with his examination report, to the revenue agent in charge, and the agent in charge in turn confirmed receipt by forwarding a copy of the return and the agent's report to the corporation. More than 5 years later, the Commissioner issued a notice of deficiency based on the corporation's failure to file a return for the 3-month period. The Board of Tax Appeals, in construing the predecessor of section 6091,[6] held that the notice was timely, writing that:

> It is no part of the duties of an internal revenue agent or of an internal revenue agent in charge to file returns for taxpayers. That is the duty which law places on the shoulders of the taxpayers. The petitioner did not file a return for the fiscal year ended March 31, 1920. Since no return has been filed covering the income of such period, the statute of limitations has not begun to run as to this fiscal year. * * * [23 B.T.A. at 607–608.]

In affirming such holding, the Sixth Circuit said:

> there seems to be a radical difference between lodging a paper, designated a return, with the commissioner, and filling the same paper with the collector. In the first case, no tax is assessed and no payment is required until the commissioner shall have acted on the record before him. In the other, the amount of the tax is immediately entered upon the appropriate list and collection is made in due course unless a claim for abatement is filed which will suspend the running of the statute. Here the law required that returns

---

[5]See also *Harrod v. Commissioner*, T.C. Memo. 1961–300; *Kotovic v. Commissioner*, T.C. Memo. 1959–177.

[6]Sec. 241(b), Revenue Act of 1918, provided that:

"Returns shall be made to the collector of the district in which is located the principal place of business or principal office or agency of the corporation, or, if it has not principal place of business or principal office or agency in the United States, then to the collector at Baltimore, Maryland."

be filed *with the collector.* [Emphasis in original.] This was obviously for the purpose of facilitating the prompt and orderly assessment and collection of taxes. *At best the internal revenue agent was but the agent of the taxpayer for the purpose of filing the returns, and the situation is no different than it would have been had the taxpayer itself delivered the returns to the commissioner.* [64 F.2d at 507–508; emphasis added.]

Similarly, in *O'Bryan Bros.*, the court found that the submission of a gift tax return to an agent was insufficient to commence the running of the period of limitations on assessment. There, the taxpayer mailed his return to the internal revenue agent in charge, and after writing to the taxpayer, the agent in fact forwarded the return to the collector for filing. The notice of deficiency was issued more than 3 years after the taxpayer had mailed the return to the agent but less than 3 years after it had been filed with the collector. The taxpayer argued that the assessment was barred by the 3-year statute of limitations. There, too, the Sixth Circuit insisted upon specific compliance with the statutory filing requirement[7] and held the notice to be timely; the court said:

It was the duty of the taxpayer under this statute to file the return with the collector of the district. It was not the duty of the internal revenue agent in charge to file a return for the taxpayer. * * * [8] [127 F.2d at 647.]

A long line of cases has established that the running of the statute of limitations on assessment requires the taxpayer to prove the date of the filing of a return. See *United States v. Gurley*, 415 F.2d 144, 147 (5th Cir. 1969); *Young v. Commissioner*, 208 F.2d 795 (4th Cir. 1953), affg. a Memorandum Opinion of this Court; *BJR Corp. v. Commissioner*, 67 T.C. 111, 119 (1976). Where there is a question as to whether the return was filed, the records of the IRS are an item of evidence. See, e.g., *Parker v. Commissioner*, 365 F.2d 792, 800 (8th Cir. 1966), affg. on this issue a Memorandum Opinion of this Court; *BJR Corp. v. Commissioner, supra* at 121. Moreover, the absence of an entry on such record is evidence of the nonoccurrence of an

---

[7]Sec. 507(b) of the Revenue Act of 1932 required that returns be filed "with the collector for the district in which is located the legal residence of the donor."

[8]When the issue is not the running of the statute of limitations on assessment, the courts have adopted a less strict view of what constitutes the filing of a return. Compare *Bookwalter v. Mayer*, 345 F.2d 476 (8th Cir. 1965); *Ardbern Co. v. Commissioner*, 120 F.2d 424 (4th Cir. 1941), modifying and remanding 41 B.T.A. 910 (1940).

event ordinarily recorded. Fed. R. Evid. 803(10); see *United States v. Johnson*, 577 F.2d 1304, 1312 (5th Cir. 1978); *United States v. Harris*, 551 F.2d 621, 622 (5th Cir. 1977); see also *United States v. Lanier*, 578 F.2d 1246, 1255 (8th Cir. 1978); *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976).

The record in this case leaves considerable doubt as to whether the amended returns were filed by the petitioner on June 21, 1976. They were handed to the revenue agent; they were not handed to the District Director. It was not the responsibility of the revenue agent to transmit such returns for filing, and in fact, the evidence indicates that they were never filed. Since they were not filed, the additional taxes shown thereon were never assessed. Moreover, although the petitioner's transmittal letter recognized that the amended returns called for the payment of additional taxes, he did not transmit such payments with the amended returns, and so far as we know, he never paid the additional taxes. His failure to pay the additional taxes raises a question as to whether he intended for the amended returns to be filed. Finally, the IRS did not rely on the amended returns in either the criminal or civil cases against the petitioner; instead, the IRS agents made an independent investigation to determine the petitioner's income, and they concluded that his income was somewhat different from that shown on the amended returns. In view of this record, we conclude and hold that the petitioner has failed to prove that he is entitled to summary judgment that the statute of limitations bars a notice of deficiency for the years 1971 through 1974.

There is an additional ground for denying the petitioner's motion with respect to 1972. Section 6501(c)(4) states, in part:

Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title * * * both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. * * *

In connection with his objections to the petitioner's motion, the Commissioner produced an extension which he claims was executed in accordance with such provision. The form appears to have been executed by both the petitioner and a representative of the Commissioner and to have been executed within 3 years after the alleged filing of the amended returns in 1976.

Accordingly, even if the amended returns were considered to be filed at such time, such consent, if validly executed, would have extended the time for assessing any deficiency for 1972. Thus, in any event, there is a question as to whether the statute of limitations had expired for 1972 before the issuance of the notice of deficiency. For that reason, we would not, in any event, grant the petitioner's motion for summary judgment insofar as it relates to 1972.

*An appropriate order will be issued.*