DANIEL C. PEACH, JR., AND PEGGY B. PEACH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 19718–84.     Filed June 20, 1985.

Daniel C. Peach, Jr., pro se.
*Willard N. Timm, Jr.,* and *Todd K. Snyder,* for the respondent.

OPINION

SCOTT, *Judge:* This case is before us on respondent's motion for summary judgment. The issue raised by respondent's motion is whether petitioners are entitled to an energy tax credit with respect to a water-source heat pump installed in 1980.

At the hearing on respondent's motion, the parties agreed to all the facts necessary to a decision of the issue presented here. Since there is no issue of material fact in this case, its disposition on the basis of respondent's motion for summary judgment is appropriate. Rule 121(b), Tax Court Rules of Practice and Procedure; *Espinoza v. Commissioner,* 78 T.C. 412 (1982).

---

PFN letters alone, as of Apr. 30, 1985, approximately 22,629 have been issued by the Internal Revenue Service.

Respondent determined a deficiency in petitioners' income tax for the calendar year 1980 in the amount of $1,672.

The agreed facts in this case show that petitioners resided in Great Falls, South Carolina, at the time of the filing of their petition in this case. They filed a joint Federal income tax return for the calendar year 1980 with the Internal Revenue Service Center, Atlanta, Georgia.

In the spring of 1980, Mr. Peach (petitioner) began consideration of installing a water-source heat pump (sometimes referred to as a ground water heat pump) to produce a source of energy to heat and cool petitioners' residence. On August 21, 1980, petitioner placed a firm order for the heat pump and the materials necessary for its installation. Later that year, the heat pump was installed. This heat pump is one which pumps water from a well. The year-round temperature of the water used in the system installed by petitioners is 15.56 degrees to 18.33 degrees Celsius (60 degrees to 65 degrees Fahrenheit). At the time petitioners purchased the heat pump for heating and cooling purposes in their home, the suppliers of such heat pumps were advertising that a person would be entitled to an energy tax credit with respect to the heat pump if it was used with a geothermal well water system. Petitioner asked someone at the Internal Revenue Service (IRS) whether the equipment he was considering purchasing, which he described to the individual with whom he spoke, would qualify for the energy tax credit. The individual at the IRS with whom petitioner spoke told him that no standards for equipment to be used with a geothermal well water system had been published and therefore the equipment he was considering purchasing should qualify. However, this individual suggested that petitioner read "Your Federal Income Tax," Publication 17. Petitioner obtained this publication, which referred the reader to IRS Publication 903 for a full explanation of the energy tax credit. Petitioner obtained the November 1979 revision of Publication 903. This publication contained the following statement which petitioner interpreted to entitle him to the energy tax credit with respect to the equipment he was contemplating buying:

The renewable energy source property, to qualify, must be new, must be expected to last at least 5 years, and must meet certain performance and quality standards to be set by the Secretary of the Treasury. As of the date of

this publication, no performance and quality standards have been issued. However, the property does not have to meet the standards if you buy it before the standards are published. The cost of renewable energy source equipment includes labor cost properly allocable to the on-site preparation, assembly, or installation of the equipment.

\*     \*     \*     \*     \*     \*     \*

Geothermal energy property is equipment that uses geothermal energy to heat or cool the home or to provide hot water for use within the home. This is done by distributing or using geothermal deposits. A geothermal deposit is a geothermal reservoir containing natural heat stored in rocks, water, or vapor. For example, hot springs are a geothermal deposit.

Petitioners, on their income tax return for the calendar year 1980, claimed a residential energy credit of $1,672. On the Form 5695, "Energy Credits," attached to their return, petitioners showed an amount of $6,368.21 as expended for "Renewable Energy Source items: b. Geothermal" with a resulting energy credit of $2,547.28. The claimed credit was limited to $1,672 since the amount of petitioners' income tax for 1980 shown on their return prior to reduction by the claimed energy tax credit was $1,672. At the bottom of the Form 5695 attached to petitioners' return, the statement "credit carryover 875.28" appears.

Respondent, in his notice of deficiency, disallowed the energy tax credit claimed by petitioners.

Section 44C (now section 23) of the Code[1] provides for a credit to be allowed to individuals for qualified expenditures after April 20, 1977, and prior to December 31, 1985, for property which, when installed in connection with a dwelling, transmits or uses geothermal deposits as defined in section 613(e)(3) for the purpose of heating or cooling such dwelling or providing hot water or electricity for use with such dwelling.[2]

---

[1]Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the year here in issue.

[2]Sec. 44C(c)(5) and (6) provides in part:

(5) RENEWABLE ENERGY SOURCE PROPERTY.—The term "renewable energy source property" means property—

  (A) which, when installed in connection with a dwelling, transmits or uses—

    (i) solar energy, energy derived from the geothermal deposits (as defined in section 613(e)(3)), or any other form of renewable energy which the Secretary specifies by regulations, for the purpose of heating or cooling such dwelling or providing hot water or electricity for use within such dwelling, or

    (ii) wind energy for nonbusiness residential purposes,

  (B) the original use of which begins with the taxpayer,

The statute specifically provides that the Secretary shall by regulation establish the criteria which are to be used in prescribing performance and quality standards for renewable energy source property and to establish a procedure under which a manufacturer of an item may request the Secretary to certify that the item would be treated as renewable energy source property.

On May 23, 1979, proposed regulations with respect to renewable energy source property and the energy tax credit were published in the Federal Register (44 Fed. Reg. 29924 (1979)). Section 1.44C–2(e) of this proposed regulation described renewable energy source property insofar as here pertinent as follows:

> (e) *Renewable energy source property*—(1) *In general*. The term "renewable energy source property" includes any solar energy property, wind energy property, geothermal energy property, or property referred to in subparagraph (2), which meets the following conditions:
>
> (i) The original use of the property begins with the taxpayer.
>
> (ii) The property can reasonably be expected to remain in operation for at least 5 years.
>
> (iii) The property meets the applicable performance and quality standards prescribed in sec. 1.44C–4 (if any) that are in effect at the time of the taxpayer's acquisition of the property.

Section 1.44C–2(h) of these proposed regulations defined geothermal energy property. This section, which included a definition of a geothermal deposit, provided as follows:

> (h) *Geothermal energy property*. The term "geothermal energy property" includes equipment (and parts solely related to the functioning of such equipment) necessary to transmit or use energy from a geothermal deposit to heat or cool a dwelling or provide hot water for use within the dwelling. Equipment such as a pipe that serves both a geothermal function (by transmitting hot geothermal water within a dwelling) and a non-geothermal

---

(C) which can reasonably be expected to remain in operation for at least 5 years, and

(D) which meets the performance and quality standards (if any) which—

    (i) have been prescribed by the Secretary by regulations, and

    (ii) are in effect at the time of the acquisition of the property.

(6) REGULATIONS.—

    (A) CRITERIA; CERTIFICATION PROCEDURES.—The Secretary shall by regulations—

        (i) establish the criteria which are to be used in (I) prescribing performance and quality standards under paragraphs (3), (4), and (5), or (II) specifying any item under paragraph (4)(A) (viii) or any form of renewable energy under paragraph (5)(A)(i), and

        (ii) establish a procedure under which a manufacturer of an item may request the Secretary to certify that the item will be treated, for purposes of this section, as insulation, an energy-conserving component, or renewable energy source property.

function (by transmitting hot water from a water heater within a dwelling) does not qualify as geothermal property. A geothermal deposit is a geothermal reservoir consisting of natural heat which is from an underground source and is stored in rocks or in an aqueous liquid or vapor (whether or not under pressure), having a temperature exceeding 60 degrees Celsius as measured at the well head or, in the case of a natural hot spring (where no well is drilled), at the intake to the distribution system.

The final regulations with respect to the residential energy credit which apply to the year 1977 and all subsequent years, were promulgated on November 29, 1980. In T.D. 7717, 1980–2 C.B. 7, 9, the following appears with respect to a change made in the final regulations as compared to the proposed regulations defining geothermal energy property:

> The residential energy credit applies to property which transmits or uses energy derived from a geothermal deposit to heat or cool a dwelling or provide hot water for use within the dwelling. Several comments suggested that the definition of geothermal deposit be revised either by deleting the 60 degrees Celsius temperature limitation or by lowering the temperature limitation. The temperature limitation has been lowered to 50 degrees Celsius. It has been concluded that 50 degrees Celsius is an appropriate measure for determining whether heat is derived from geothermal reservoirs (heated by the earth's magma) or is derived from heat associated with ground water that is affected by atmospheric temperatures.

Section 1.44C–2(h) of the regulation promulgated November 29, 1980, reads as follows:

> (h) *Geothermal energy property.* The term "geothermal energy property" includes equipment (and parts solely related to the functioning of such equipment) necessary to transmit or use energy from a geothermal deposit to heat or cool a dwelling or provide hot water for use within the dwelling. Equipment such as a pipe that serves both a geothermal function (by transmitting hot geothermal water within a dwelling) and a non-geothermal function (by transmitting hot water from a water heater within a dwelling) does not qualify as geothermal property. A geothermal deposit is a geothermal reservoir consisting of natural heat which is from an underground source and is stored in rocks or in an aqueous liquid or vapor (whether or not under pressure), having a temperature exceeding 50 degrees Celsius as measured at the wellhead or, in the case of a natural hot spring (where no well is drilled), at the intake to the distribution system.

It is apparent from the proposed regulations as compared to the final regulations that the only difference in the definition of a geothermal deposit is that in the final regulation, the

temperature requirement of a geothermal deposit is reduced from 60 degrees Celsius to 50 degrees Celsius.

It is not clear whether petitioner in this case is arguing that the definition of a geothermal deposit as contained in the regulations is an unreasonable interpretation of the statute or whether he is arguing that it is arbitrary in his case to make the regulation retroactive. If his argument is that the regulation is unreasonable, we do not agree with his conclusion. This regulation was promulgated pursuant to a specific statutory authority. Such regulations are legislative in nature and should be sustained unless clearly inconsistent with the statute they implement. *Wing v. Commissioner*, 81 T.C. 17, 28 (1983).[3]

Clearly, a requirement of a temperature exceeding 50 degrees Celsius is a reasonable regulation for determining the heat requirement of a geothermal deposit.[4]

We do not agree with petitioner's contention that respondent was arbitrary in applying sec. 1.44C–2(h) of the regulations retroactively either as a general matter or with respect to petitioner.

Section 7805 authorizes the Secretary or his delegate to prescribe regulations for the enforcement of the tax laws. Subsection (b) of that section states:

SEC. 7805(b). RETROACTIVITY OF REGULATIONS OR RULINGS.—The Secretary may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect.

---

[3]In *Reddy v. Commissioner*, T.C. Memo. 1984–395, we had before us the exact issue with respect to the validity of sec. 1.44C–2(h), Income Tax Regs., as is involved here. In that case, we held this regulation to be a reasonable interpretation of the statute, relying on the legislative nature of the regulation and citing *Wing v. Commissioner*, 81 T.C. 17 (1983); *Olson v. Commissioner*, 81 T.C. 318 (1983). In the *Reddy* case, we pointed out that the temperature limitation was included in the regulation to ensure that only property using geothermal, as opposed to surface sources of energy, would qualify as geothermal property. We concluded that the regulation was clearly consistent with sec. 44C(c)(5)(A) which applies to energy derived from geothermal deposits. Petitioner here argues that we should conclude in this case that the water his heat pump used was geothermal rather than surface since its temperature was consistent throughout the year. There is no evidence in the record to support this conclusion. However, even if this were a fact, it would not cause us to conclude that the water used by petitioner's heat pump met the definition of the regulation which requires a 50-degree Celsius temperature to assure that the energy source is geothermal.

[4]Sec. 613(e)(3), which is referred to for the definition of geothermal deposits, provides in part as follows:

(3) GEOTHERMAL DEPOSIT DEFINED.—For purposes of paragraph (1), the term "geothermal deposit" means a geothermal reservoir consisting of natural heat which is stored in rocks or in an aqueous liquid or vapor (whether or not under pressure). * * *

It is clear from this provision that regulations apply retroactively unless otherwise specified. As was stated in *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180 (1957), the language of this section confirms the authority of the Commissioner to make a regulation retroactive. Therefore, except in unusual circumstances, making a regulation retroactive is not an abuse of discretion by the Commissioner. The proposed regulation defining a geothermal deposit as having a temperature exceeding 60 degrees Celsius was published in May 1979, well before petitioner considered the installation of the ground water heat pump in his home. Although we do not doubt petitioner's statement that he interpreted the language contained in IRS Publication 903 to mean that no standards had been specified for determining what constituted a geothermal deposit, we do not agree with his interpretation of this publication. In our view, the standards referred to in the publication were the standards for the equipment and not a definition of a geothermal deposit. For this reason, we need not and do not consider the issue raised by the parties of whether the retroactive application of a regulation that is contrary to IRS publications relied on by a taxpayer might be arbitrary as to that taxpayer. From May 1979, there was public notice in the proposed regulations that a temperature level would be a part of the definition of a geothermal deposit. This is not a case of a regulation which was changed after petitioner had relied upon the prior regulation. Under the circumstances here present, making section 1.44C–2(h) of the regulations retroactive clearly was not an abuse of the Commissioner's authority. *Wendland v. Commissioner*, 79 T.C. 355, 382 (1982), affd. per curiam 739 F.2d 580 (11th Cir. 1984), affd. sub nom. *Redhouse v. Commissioner*, 728 F.2d 1249 (9th Cir. 1984).

Respondent's motion for summary judgment will be granted.

*An appropriate order and decision will be entered.*