# United States Tax Court

T.C. Memo. 2026-24

KAVAN SHABAN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 4885-25P.                          Filed March 3, 2026.

————————

*Erica L. Brady-Gitlin* and *Robb A. Longman*, for petitioner.

*Lisa P. Lafferty*, for respondent.

## MEMORANDUM OPINION

LANDY, *Judge*: In this passport case, petitioner, Kavan Shaban, seeks review pursuant to section 7345(e)[1] of the certification by the Commissioner of the Internal Revenue Service (IRS) to the Secretary of State that Mr. Shaban has a "seriously delinquent tax debt" for unpaid section 6672 trust fund recovery penalty (TFRP) liabilities for the periods ending September 30, 2018, June 30, 2019, and December 31, 2019 (collectively, periods at issue). Pending before the Court are the parties' Cross-Motions for Summary Judgment, filed July 16, 2025, and January 5, 2026, respectively.

For the reasons set forth below, we will grant the Commissioner's Motion and deny Mr. Shaban's Motion.

————————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to nearest whole number.

[*2]                          *Background*

I.     *Mr. Shaban's TFRP Liabilities*

Mr. Shaban is a medical doctor who owns a group of businesses with his family, including Persona Doctors HQ, LLC (PersonaHQ). In 2007 Mr. Shaban hired his brother, Shevan Shaban (Shevan), to serve as the business manager for PersonaHQ. Shevan's responsibilities included handling payroll, filing and paying payroll taxes, and filing tax returns. Shevan served in this capacity without incident until 2019 when Mr. Shaban discovered that Shevan had embezzled approximately $9 million from the family businesses, including trust fund taxes that were supposed to have been paid by PersonaHQ to the IRS.

In October 2022 Mr. Shaban sued Shevan in Maryland state court to recover the embezzled funds. The parties settled, and as part of that settlement, Shevan acknowledged that he filed false tax returns on behalf of the businesses, and he took sole responsibility for the nonpayment of PersonaHQ's trust fund taxes. Shevan similarly agreed to provide written statements upon request to the IRS and other taxing authorities explaining his role in the embezzlement scheme.

II.    *Assessment and Collection of Mr. Shaban's TFRP Liabilities*

On March 23, 2021, the IRS informed Mr. Shaban of its determination to assess TFRPs against him, under section 6672(b), for failure to pay employment taxes as owner of PersonaHQ for the periods at issue.[2] While Mr. Shaban's representative protested the IRS's decision to assess the TFRPs, the IRS sustained the TFRP assessment because Mr. Shaban's representative failed to timely respond to the IRS's requests for documents.

Subsequently, on September 15, 2023, the IRS assessed the TFRPs for the periods at issue and sent Notice CP14, Statutory Notice of Balance Due, to Mr. Shaban informing him that he owed a balance for the periods at issue. To collect the unpaid TFRPs, the IRS issued a Notice of Intent to Levy (levy notice) on November 6, 2023, which informed Mr. Shaban of his right to a collection due process (CDP) hearing under section 6330. On November 21, 2023, the IRS sent Mr. Shaban a Notice of Federal Tax Lien Filing (lien notice) notifying

---

[2] The IRS also made the determination to assess TFRPs for the additional periods ending March 31, 2018, June 30, 2018, December 31, 2018, and March 31, 2019; however, these periods are not at issue in this case.

[*3] him that a lien had been filed on November 17, 2023, regarding the periods at issue. Mr. Shaban did not request a CDP hearing regarding either the levy notice or the lien notice. Accordingly, on January 10, 2024, the IRS levied to collect the TFRP liabilities for the periods at issue.

### III.  *The IRS's Certification to the Department of State*

On February 19, 2024, the IRS notified Mr. Shaban that he had been certified as an individual with a seriously delinquent tax debt. Shortly thereafter, on March 6, 2024, Mr. Shaban submitted an offer-in-compromise (OIC) to the IRS, which it deemed processable, and as a result, the IRS reversed the seriously delinquent tax debt certification. A year later, on February 19, 2025, the IRS rejected or returned Mr. Shaban's OIC.

As a result, in Notice CP508C, Notice of Certification of Your Seriously Delinquent Federal Tax Debt to the U.S. Department of State (Notice of Certification), dated March 24, 2025, the IRS advised Mr. Shaban that he had been certified as an individual owing a seriously delinquent tax debt (section 7345 certification) with respect to the periods at issue and that the Department of State had been notified of the section 7345 certification. The Notice of Certification further informed Mr. Shaban that the Department of State could revoke his passport or refuse to issue him a new passport. Before mailing Mr. Shaban the Notice of Certification, the commissioner of the IRS Small Business/Self-Employed Division (SB/SE Commissioner)—the official with the delegated authority for section 7345 certifications—reviewed Mr. Shaban's account and approved the section 7345 certification. At the time of the issuance of the Notice of Certification, the amount of Mr. Shaban's seriously delinquent tax debt totaled $147,274.

On April 16, 2025, Mr. Shaban, while residing in Maryland, filed the Petition challenging the Notice of Certification. In his Petition Mr. Shaban does not dispute that he meets the definition of a person with a seriously delinquent tax debt. Instead, he disputes his liability for the assessed TFRPs, and he seeks to resolve the debt administratively. Absent stipulation to the contrary, appeal of this case would lie to the U.S. Court of Appeals for the District of Columbia Circuit. *See Adams v. Commissioner* (*Adams II*), 122 F.4th 429, 433–34 (D.C. Cir. 2024), *aff'g Adams v. Commissioner* (*Adams I*), 160 T.C. 1 (2023).

**[\*4]** On July 16, 2025, the Commissioner filed a Motion for Summary Judgment contending that the IRS's certification was not erroneous and that Mr. Shaban improperly seeks to challenge the assessment of TFRPs in this proceeding. Mr. Shaban objected to the Commissioner's Motion and maintained that the IRS should reverse its section 7345 certification because he is not liable for the TFRPs as a victim of identity theft and that the certification is erroneous because it is premature.

Subsequently, on January 5, 2026, Mr. Shaban filed a Motion for Summary Judgment contending that the Commissioner's section 7345 certification is erroneous because the IRS used a computer instead of the statutorily designated IRS official to certify that he owed a seriously delinquent tax debt, violating section 7345(g). The Commissioner filed his Objection to Motion for Summary Judgment on January 29, 2026, maintaining that his internal computer system identifies accounts that meet the seriously delinquent tax debt criteria and then generates a list of accounts for certification that is emailed to the SB/SE Commissioner, who then reviews the accounts that have been identified and approves the certifications. On February 6, 2026, petitioner filed a Response to Objection to Motion for Summary Judgment reiterating many of his same contentions.

## *Discussion*

### I. *General Principles*

#### A. *Summary Judgment*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Generally, in cases subject to de novo review, this Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In such cases the moving party bears the burden of proving that summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Espinoza v. Commissioner*, 78 T.C. 412, 416 (1982). In deciding whether to grant summary judgment in such cases, we construe factual materials and inferences drawn from them in the light most favorable to the adverse party. *Sundstrand Corp.*, 98 T.C. at 520.

In cases in which the Court "must confine [itself] to the administrative record to decide whether there has been an abuse of

[*5] discretion," the ordinary "summary judgment standard is not generally apt." *Van Bemmelen v. Commissioner*, 155 T.C. 64, 78 (2020). In such cases, "summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 79; *see also* Rule 121(j).

B.    *Scope and Standard of Review under Section 7345*

This Court is a court of limited jurisdiction, and we may exercise jurisdiction only to the extent authorized by Congress. *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). When the Commissioner certifies that a taxpayer has a seriously delinquent tax debt, the taxpayer may petition this Court "to determine whether the certification was erroneous or whether the Commissioner has failed to reverse the certification." § 7345(e)(1). Thus, our jurisdiction in passport certification cases is limited to determining whether the certification was erroneous or whether the Commissioner failed to reverse the certification. *Adams I*, 160 T.C. at 7–8.

Accordingly, this Court does not have jurisdiction to review TFRP liabilities underlying the certification of a seriously delinquent tax debt. *Garcia v. Commissioner,* No. 27496-22P, 164 T.C., slip op. at 10 n.9 (May 19, 2025); *Adams I*, 160 T.C. at 12 (citing *Ruesch v. Commissioner*, 154 T.C. 289, 295–98 (2020), *aff'd in part, vacated and remanded in part per curiam*, 25 F.4th 67 (2d Cir. 2022)). "Section 7345 requires simply that the liability 'has been assessed,' not that the liability 'has been *properly* assessed.' . . . In short, once the existence of an assessment is shown . . . , section 7345(b)(1)(A) is satisfied, and we have no authority to inquire further." *Adams I*, 160 T.C. at 13. If we find that a certification was erroneous, we "may order the Secretary [of the Treasury] to notify the Secretary of State that such certification was erroneous." § 7345(e)(2). "The statute specifies no other form of relief that we may grant." *Garcia*, 164 T.C., slip op. at 8 (citing *Ruesch v. Commissioner*, 25 F.4th at 70).

In *Garcia*, 164 T.C., slip op. at 7, this Court held that our "review of section 7345 certifications should occur on a new record made at the Tax Court, which may include, where appropriate, evidence introduced at trial." We noted, however, that such a holding was narrow and unlikely to affect most passport cases because "in most passport cases, there is no need to look beyond the administrative record to resolve the

[*6] issues in dispute." *Id.* at 19. Because there is no material dispute between the parties regarding the evidence we should consider, we need not look beyond the administrative record. Furthermore, our decision is the same whether we reviewed the Commissioner's certification de novo or for abuse of discretion. *See, e.g., Rowen v. Commissioner*, 156 T.C. 101, 106 (2021). Accordingly, we need not decide in this case either the applicable scope or standard of review. *Id.*

C.     *Section 7345*

If the Commissioner determines under section 7345(a) that a taxpayer owes "a seriously delinquent tax debt," the Commissioner shall so certify, and that certification shall be transmitted "to the Secretary of State for action with respect to denial, revocation, or limitation of [the taxpayer's] passport." The Commissioner is responsible for notifying the taxpayer of the certification. § 7345(d). The term "seriously delinquent tax debt" is defined in section 7345(b). Generally, a "seriously delinquent tax debt" is an unpaid, legally enforceable federal tax liability of an individual that (1) has been assessed; (2) is greater than $50,000; and (3) with respect to which a notice of lien has been filed pursuant to section 6323 and the administrative rights under section 6320 with respect to such filing have been exhausted or have lapsed, or a levy is made pursuant to section 6331. § 7345(b)(1). The $50,000 amount described in section 7345(b)(1)(B) is adjusted to account for inflation. § 7345(f). The amount for the year 2025 when the Commissioner certified Mr. Shaban's tax debt as seriously delinquent was $64,000. *See* Rev. Proc. 2024-40, § 2.60, 2024-45 I.R.B. 1100, 1110.

Section 7345(b)(2) provides exceptions to the definition of "seriously delinquent tax debt." Accordingly, a seriously delinquent tax debt does not include a debt being paid pursuant to an installment agreement or an OIC, or a debt with respect to which collection is suspended because of a collection due process hearing or request for relief from joint and several liability. § 7345(b)(2). None of these exceptions applies to Mr. Shaban. Certain circumstances, including an administrative claim for identity theft approved by the IRS, may also remove a liability from qualifying as a seriously delinquent tax debt and can cause a certification to be reversed. *See* Internal Revenue Manual (IRM) 5.19.25.5 (Jan. 24, 2024). The IRS made a policy decision that these discretionary exclusions apply to all taxpayers who meet the exclusion criteria. *Id.* A discretionary exclusion does not mean IRS employees have discretion in applying exclusions. *Id.*

[*7]     A certification under section 7345(a), or a reversal under section 7345(c), "may only be delegated by the Commissioner . . . to the Deputy Commissioner for Services and Enforcement, or the Commissioner of an operating division, of the [IRS]." § 7345(g). The Commissioner has delegated his authority to certify, or reverse, a certification to the SB/SE Commissioner. I.R.S. Deleg. Order 1-65 (Rev. 1), IRM 1.2.2.2.49 (Apr. 8, 2024); *see also* IRM 5.19.25.2(3) (Aug. 12, 2020). The IRS's computer system identifies taxpayers whose accounts show that they meet the definition of having seriously delinquent tax debts. *See* IRM 5.19.25.7 (Jan. 24, 2024). The computer system then generates a list of accounts of taxpayers who meet the section 7345 requirements, and an IRS employee sends that list via email to the SB/SE Commissioner. Upon receipt, the SB/SE Commissioner reviews the list and certifies (or reverses the certification of) the taxpayers on the list by replying to the email. Afterwards, the taxpayers that remain on the list and have been identified as certified to the State Department will be systemically sent Notice CP508C, Notice of Certification of Your Seriously Delinquent Federal Tax Debt. IRM 5.19.25.7(2), .8(1) (Jan. 24, 2024). The IRS sends these notices systemically by regular mail to the taxpayer's last known address. IRM 5.19.25.8(5) (Jan. 24, 2024).

II.     *Analysis*

A.     *Whether Mr. Shaban Satisfies the Requirements of Section 7345*

In support of his Motion for Summary Judgment, the Commissioner introduced three Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters, relating to the periods at issue. The Forms 4340 reflect that the IRS assessed Mr. Shaban's unpaid TFRPs and interest for the periods at issue on September 15, 2023. *See* § 7345(b)(1)(A). At the time of certification in 2025, Mr. Shaban's seriously delinquent tax debts for the periods at issue totaled $147,274, an amount far greater than the $64,000 threshold. *See* § 7345(b)(1)(B), (f). While Mr. Shaban attempts to assign payment responsibility for these debts to his brother, the settlement agreement between Mr. Shaban and Shevan does not create a requirement for Shevan to pay the outstanding TFRP liabilities; as a result, the liabilities remain legally enforceable against Mr. Shaban.

In addition, the Commissioner filed a Notice of Federal Tax Lien pursuant to section 6323 with respect to the periods at issue and sent to Mr. Shaban the lien notice of that filing. *See* § 7345(b)(1)(C)(i).

[*8] Mr. Shaban did not request a CDP hearing in response, and it is uncontested that the time for requesting such a hearing has passed. *See id.* With respect to the periods at issue, a levy had been made pursuant to section 6331. *See* § 7345(b)(1)(C)(ii). In short, the Commissioner has demonstrated that Mr. Shaban had an unpaid, assessed, and legally enforceable federal tax liability exceeding $64,000 at the time of certification and that his liability met the statutory definition of a "seriously delinquent tax debt." *See* § 7345(b). Accordingly, the Commissioner has met his burden to show that the certification regarding Mr. Shaban was appropriate.

## B. *Mr. Shaban's Arguments*

Mr. Shaban does not contest that his TFRP liabilities meet the statutory definition of a seriously delinquent tax debt, or that any of the section 7345(b)(2) exceptions applies. Instead, Mr. Shaban argues that he is not liable for the TFRPs because they are attributable to Shevan's embezzlement. Such an argument is an attempt to challenge the underlying liabilities. Mr. Shaban was afforded multiple opportunities to dispute his underlying liabilities before the instant proceedings. "Only much later, after his passport was in jeopardy, did he attempt to dispute the IRS collection and enforcement actions. Section 7345 plainly forecloses such an eleventh-hour collateral attack on a person's underlying tax liabilities." *Adams II*, 122 F.4th at 435. While we are sympathetic to Mr. Shaban and the unfortunate events leading to his TFRP liabilities, "we do not have jurisdiction to review the liabilities underlying the certification of a seriously delinquent tax debt." *Adams I*, 160 T.C. at 12 (citing *Ruesch*, 154 T.C. at 295–98).

Next, Mr. Shaban contends that one of the discretionary exceptions found in the IRM applies because he was a victim of identity theft and Shevan's embezzlement. However, for that IRM provision to apply, Mr. Shaban had to file an identity theft claim administratively with the IRS and have that claim approved. *See* IRM 5.19.25.5(1)(b) (indicating that a taxpayer's account transcript must show unreversed codes TC 971 AC 522, 523, and 525); *see also* IRM 5.1.28.8.6 (July 14, 2021) (explaining that code TC 972 AC 522 is used to close identity theft allegations when the IRS determines that identity theft has not occurred or in situations where the taxpayer fails to provide an identity theft claim). The Forms 4340 submitted by the Commissioner do not reflect that such a claim was filed or approved, and Mr. Shaban has not represented to the Court that he filed such a claim or that it subsequently was approved. The Commissioner's employees do not have

[*9] discretion to apply the requested exclusion. *See* IRM 5.19.25.5(2). Similarly, because a claim for identity theft goes towards the underlying liability, neither may this Court apply the exclusion. As a result, the discretionary exclusion does not apply.

Mr. Shaban further maintains that the Commissioner's section 7345 certification was premature because he has not exhausted his right to pay the outstanding balances, file an administrative request for a refund, and, if needed, bring an action for refund in district court. As the D.C. Circuit has explained: "[T]he Treasury Secretary may only transmit a delinquency certification to the [Department of State] after an individual has had the opportunity to exercise administrative rights to challenge an IRS lien or levy." *Adams II*, 122 F.4th at 435. The statute, however, is clear that exhausting administrative and judicial refund rights is not included in the definition of a seriously delinquent tax debt. § 7345(b). Thus, the certification was not premature.

Finally, Mr. Shaban contends that the Commissioner's section 7345 certification was erroneous because the Commissioner violated section 7345(g) in using the IRS's computer system to identify and certify taxpayer accounts that meet the requirements of section 7345. While the Commissioner acknowledges that the IRS computer system is programmed to systemically identify taxpayer accounts that reflect a seriously delinquent tax debt, the computer system merely generates a list of such accounts. That list is then sent by an IRS employee for certification to the SB/SE Commissioner, the properly delegated authority under IRM 1.2.2.2.49. Upon receiving the list generated by the computer system, the SB/SE Commissioner verifies that the tax debts reflected in the accounts listed meet the requirements of section 7345 and gives final approval and certification. Section 7345(g) does not preclude the Commissioner from using computer systems to identify taxpayer accounts showing balances due that meet the definition of seriously delinquent tax debts. Section 7345(g) requires only that any passport certification be approved by an appropriate IRS official, in this case the SB/SE Commissioner. The Commissioner has demonstrated that he has satisfied the requirements of section 7345(g), and thus, the section 7345 certification related to Mr. Shaban was proper.

III. *Conclusion*

On the record before us, we hold that the certification of Mr. Shaban as a taxpayer owing a "seriously delinquent tax debt" was not erroneous. Accordingly, we will grant summary judgment for the

**[\*10]** Commissioner and deny Mr. Shaban's Motion for Summary Judgment.

Any contentions not addressed herein are irrelevant, moot, or meritless.

To reflect the foregoing,

*An appropriate order and decision will be entered.*