T.C. Memo. 2004-241

UNITED STATES TAX COURT

OZIE R. M. QUARTERMAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11119-02.              Filed October 21, 2004.

R determined a tax deficiency and additions to
tax, under secs. 6651(a)(1) and 6654, I.R.C., for P for
1995. R has no record that P filed a 1995 return,
either jointly with her husband (H) (now deceased) or
separately. P and H did file timely joint returns for
1994 and 1996. P claims that she and H filed a timely
1995 joint return and, on that basis, she alleges that
the notice of deficiency is barred by the 3-year
statute of limitations on assessment under sec.
6501(a), I.R.C. She further alleges that the notice of
deficiency is "insufficient" because it is not a joint
notice. Assuming the notice of deficiency is timely
and valid, she alleges that she (1) is taxable on only
one-half of the interest included in her income by R
because it was paid on a joint bank account, and (2) is
not liable for the additions to tax.

     1. Held: The notice of deficiency was timely
issued and constitutes a valid notice of deficiency
under sec. 6212, I.R.C.

    2. <u>Held</u>, <u>further</u>, R's determinations of a tax deficiency and addition to tax under sec. 6651(a)(1), I.R.C., are sustained.

    3. <u>Held</u>, <u>further</u>, R's determination of an addition to tax under sec. 6654, I.R.C., is modified by application of the safe harbor provided by sec. 6654(d)(1)(B)(ii), I.R.C.

<u>Bernard A. Quarterman, Jr.</u>, for petitioner.

<u>Nancy C. Carver</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, <u>Judge</u>: By notice of deficiency dated April 1, 2002 (the notice), respondent determined a deficiency of $3,390 in petitioner's 1995 Federal income tax, an $848 addition to tax under section 6651(a)(1), for failure to file a return, and a $185 addition to tax under section 6654 for failure to pay estimated income taxes.[1] After concessions, the issues for decision are (1) whether assessment of the tax (and additions to tax) would be untimely because of the 3-year period of limitations generally imposed on such assessments; (2) whether the notice is "insufficient" because it was not a joint notice to both petitioner and her husband, Bernard Quarterman, Sr. ( Mr. Quarterman), and, assuming issues (1) and (2) are decided in

---

    [1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1995, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded to the nearest dollar.

respondent's favor; (3) whether the interest included in petitioner's income by respondent constituted interest on a joint bank account belonging to petitioner and Mr. Quarterman with the result that one-half of that interest is excludable from her income; and (4) whether petitioner is liable for the additions to tax.

### FINDINGS OF FACT

Some facts are stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

At the time the petition was filed, petitioner resided in Washington, D.C.

Petitioner was employed as an architect by the Federal Government, Department of Veterans Affairs, when, on October 27, 1992, at age 52, she retired on full disability. During 1995, both petitioner and Mr. Quarterman were retired and receiving pensions, she from the Federal Government and he from his former employer, the District of Columbia. Mr. Quarterman died on September 17, 2002.

Petitioner and Mr. Quarterman filed a joint Form 1040, U.S. Individual Income Tax Return (joint return), for each of the years 1994 and 1996, but respondent has no record that petitioner filed a return (either separate or joint with Mr. Quarterman) for 1995.

On October 29, 2003, almost 17 months after the notice was issued, petitioner submitted to counsel for respondent a completed Form 1040, U.S. Individual Income Tax Return, for 1995, dated October 29, 2003, on behalf of herself and Mr. Quarterman (the 1995 Form 1040). Petitioner prepared the 1995 Form 1040 by copying a draft or copy of a return that Mr. Quarterman had previously prepared. The income items listed in the 1995 Form 1040 consist of $56,000 representing an estimate of the combined pension income received by her and Mr. Quarterman during 1995 (approximately $28,000 for each), $900 of "taxable interest income", and a $788 refund of 1994 Federal income taxes. The 1995 Form 1040 also reports an $18,087 loss attributable to rental real estate, $26,550 of itemized deductions, $5,000 for personal exemptions, taxable income of $5,963[2] and tax due of $870. The form also claims tax payments of $2,600 resulting in a refund due of $1,630.

The $3,390 tax deficiency determined by respondent for 1995 is the result of respondent's inclusion in petitioner's income for that year of (1) $28,725 listed on a Form 1099R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., issued by the

---

[2] There is an arithmetical error in the computation of taxable income. Based upon the items of income and loss, the itemized deductions, and the personal exemption amount set forth in the 1995 Form 1040, taxable income should be $8,051, not $5,963.

Office of Personnel Management (OPM) as paid to petitioner for 1995 and described by respondent as a "gross distribution" and (2) $279 of bank account interest listed on Forms 1099-INT, Interest Income, issued by the "First Union National Bank Of DC" (the bank) as paid to petitioner for 1995, and respondent's allowance of a $2,500 personal exemption and a $3,900 standard deduction, adjustments which give rise to taxable income of $22,604. Respondent gives petitioner credit for zero "PRE-PAID CREDITS (withholding, ES tax payments etc.)".

OPINION

I. Introduction

A. Petitioner's Concessions

By the petition, petitioner assigned error to the deficiency in (and additions to) tax determined by respondent. Specifically, petitioner claims that respondent erred in determining that she was taxable on her retirement income. At trial, she characterized her retirement income (pension) as a "disability insurance annuity". Prior to trial, in a letter to respondent dated November 13, 2002, petitioner's counsel made the same argument characterizing petitioner's pension as "disability insurance benefits". On brief, petitioner abandons that argument as mistaken and concedes that her pension is taxable. We accept

petitioner's concession that the $28,725 paid to petitioner by OPM in 1995 is includable in petitioner's 1995 gross income.[3]

Also, by the petition, petitioner does not claim any benefit (either a reduction in the tax deficiency or in the additions to tax as determined by the notice) attributable to the rental real estate loss, itemized deductions, and tax payments reported on the 1995 Form 1040. Nor did she offer any substantiation of those items during the trial.[4] Therefore, we find that

---

[3] The $28,725 included in petitioner's gross income by respondent is characterized in the notice as a "gross distribution". The notice indicates that that adjustment is based upon a 1995 Form 1099R (the 1099R) issued by OPM to petitioner. We have examined a blank 1995 1099R. Box 1 of the 1099R provides for the amount of the "gross distribution" and box 2a provides for the "taxable amount". Because OPM advised petitioner at the time of her retirement that she had been credited with $59,479 in "retirement contributions" during her career with the Federal Government, it is possible that box 2a of the 1099R's issued to petitioner by OPM since her retirement has listed a "taxable amount" smaller than the "gross distribution" listed in box 1, and that the difference represents the nontaxable return of her investment in her retirement as computed by applying the "exclusion ratio" of sec. 72(b). Alternatively, it may be that the 1099Rs have left box 2a blank and that "Taxable amount not determined" in box 2b has been checked in which event it was petitioner's obligation to compute the excluded amount pursuant to sec. 72(b). Because the 1099R for 1995 is not in evidence, we have no basis for concluding that a portion of $28,725 included in petitioner's income by respondent is subject to exclusion from income under sec. 72(b). For prior years for which a refund claim may be timely filed and for future years, however, petitioner may be entitled, pursuant to sec. 72(b), to exclude from income a portion of her pension.

[4] Regarding the payment of taxes, petitioner testified during the trial that she did not know of any tax payments by her or Mr. Quarterman for 1995, and that because she and Mr. Quarterman "were due a refund for 1995 * * * [she] would not have
(continued...)

petitioner has failed to raise, for our consideration, an issue regarding her entitlement to any such benefit.

    B.   <u>Petitioner's Arguments on Brief</u>

Petitioner argues that the notice was both untimely and "insufficient". Petitioner did not by pleading or motion raise the affirmative defense of statute of limitations or claim lack of jurisdiction. See Rules 39 and 40. Nevertheless, at trial and on brief, petitioner has pursued the theory that the notice was both untimely and insufficient. Those arguments are premised upon petitioner's position that she and Mr. Quarterman filed a timely 1995 joint return. Petitioner also argues that she is taxable on only one-half of the interest income attributed to her by respondent and that she is not liable for the additions to tax, issues not specifically addressed in the petition. Respondent has not objected that petitioner has attempted to try issues not raised by the pleadings. See Rule 41(b). We shall treat petitioner's claims as having been raised by the pleadings. No amendment of the petition is required. See <u>id.</u>

II.  <u>The Notice Was Both Timely and Sufficient</u>

The stipulation of facts entered into by the parties includes an original "Certification of Lack of Record", Form 3050, which states that respondent's Philadelphia, Pennsylvania,

---

    [4](...continued)
the need to make a payment toward anything owed."

office conducted a "thorough search" but found no record that petitioner filed a Form 1040 for 1995.  Arun Sharma, one of respondent's revenue agents, testified during the trial that he had examined "IRS transcripts" in the administrative file for this case, which "show that * * * [petitioner] did not file a [1995] tax return."

Petitioner testified that she had "no way to be positive that * * * [Mr. Quarterman] mailed them [the 1995 tax forms that he had "filled out"], but it is my belief that he mailed the 1995 tax return."

Respondent's Form 3050 and the testimony of Revenue Agent Sharma, which support respondent's position that petitioner never filed a return for 1995, are more persuasive than petitioner's unsubstantiated belief that Mr. Quarterman filed a 1995 joint return.  See Rodriquez v. Commissioner, T.C. Memo. 2003-153.  As we stated in Espinoza v. Commissioner, 78 T.C. 412, 421-422 (1982):

> A long line of cases has established that the running of the statute of limitations on assessment requires the taxpayer to prove the date of the filing of a return.  Where there is a question as to whether the return was filed, the records of the IRS are an item of evidence.  Moreover, the absence of an entry on such record is evidence of the nonoccurrence of an event ordinarily recorded.  [Citations omitted.]

Therefore, we find that petitioner and Mr. Quarterman did not file a joint return for 1995.[5]  On the basis of that finding, we conclude that the notice was timely issued.  See section 6501(c)(3), which provides, in pertinent part: "In the case of failure to file a return, the tax may be assessed * * * at any time."  See also Espinoza v. Commissioner, supra (taxpayer's motion for summary judgment claiming that proposed deficiencies were barred by expiration of the statute of limitations on assessments denied where the evidence indicated that no returns had been filed for the years in dispute).[6]

We also reject petitioner's argument that the notice is "insufficient" (which we interpret to mean invalid for purposes of section 6212(b)(2)) because it was not a "joint notice" issued to both petitioner and Mr. Quarterman.  Although petitioner and

---

[5]  Because we base our finding upon a preponderance of the evidence, assignment of the burden of proof under sec. 7491 is unnecessary.  See FRCG Inv., LLC v. Commissioner, T.C. Memo. 2002-276, affd. on this issue 89 Fed. Appx. 656 (9th Cir. 2004); Polack v. Commissioner, T.C. Memo. 2002-145 n.7, affd. on this issue 366 F.3d 608, 613 (8th Cir. 2004).

[6]  Petitioner does not suggest that her hand delivery of the 1995 Form 1040 to counsel for respondent on Oct. 29, 2003, constituted the filing of a valid 1995 return.  We agree that hand delivery of a return to counsel for respondent does not constitute the filing of that return.  See Espinoza v. Commissioner, 78 T.C. 412, 419-420 (1982); sec. 1.6091-2(d)(1), Income Tax Regs.  (On Sept. 16, 2004, sec. 1.6091-2(d)(1), Income Tax Regs., was amended prospectively by T.D. 9156, 2004-42 I.R.B. 669, 670.)  Therefore, that "filing" did not commence the running of the 3-year statute of limitations on assessments for 1995 pursuant to sec. 6501(a).  But even if it had, it would be of no consequence in this case since it occurred well after the issuance of the notice on Apr. 1, 2002.

Mr. Quarterman may have filed joint returns for taxable years other than 1995, we have found that they did not elect to file a 1995 joint return under section 6013(a) and section 1.6013-1(a), Income Tax Regs. Therefore, respondent could not issue a "joint notice" under section 6212(b)(2), which is only applicable "[i]n the case of a joint income tax return filed by husband and wife".[7]

III. Respondent's Attribution of Interest Income to Petitioner

Petitioner argues on brief that the $279 of interest attributed to petitioner by respondent in the notice of deficiency (the interest) constituted interest on a joint bank account and that only one-half of that interest is includable in petitioner's income.[8] Statements in briefs do not constitute evidence, Rule 143(b), and there is no evidence in the record to support petitioner's allegation on brief that the interest was generated by a bank account jointly owned by petitioner and

---

[7] The notice lists petitioner's filing status as "single", and the $3,390 tax deficiency determined therein on the basis of $22,604 of taxable income is computed under the 1995 rate schedule applicable to single taxpayers. Respondent has failed to explain his application of the rate tables applicable to single individuals and not the rate tables applicable to married persons filing separately. Compare sec. 1(c) with sec. 1(d). Because respondent does not argue for an increase in the deficiency determined in the notice, we do not undertake to correct respondent's computation of that deficiency.

[8] In certain circumstances, the income from jointly held property is taxed one-half to each co-owner. See, e.g., Greene v. Commissioner, 7 T.C. 142, 152 (1946); Sarnow v. Commissioner, T.C. Memo. 1979-452.

Mr. Quarterman. Because petitioner has failed to introduce "credible evidence" of a joint bank account, she retains the burden of proof with respect to the propriety of attributing one-half the interest to Mr. Quarterman. See sec. 7491(a)(1).

In fact, the available evidence suggests that the interest was paid to petitioner. In the notice, respondent refers to 3 Forms 1099 INT issued by the bank, which list interest payments of $49, $99, and $131 as "paid to Ozie R. M. Quarterman". In addition, the 1995 Form 1040, on line 8a and on Schedule B, line 4, lists $900 of taxable interest,[9] which suggests that respondent has, in fact, sought to tax only that portion of the total 1995 interest that was separately paid to petitioner. Lastly, in response to a question by counsel for respondent, petitioner admitted during the trial that she received $279 of interest from the bank.

Therefore, we sustain respondent's inclusion of $279 of interest in petitioner's 1995 income.

IV. Respondent's Section 6651(a) Determination

Section 6651(a)(1) provides for an addition to tax in the event a taxpayer fails to file a timely return (determined with

---

[9] We may treat the referenced entries on the 1995 Form 1040 as an admission by petitioner that she, Mr. Quarterman, or both combined received $900 of interest income in 1995 even though we conclude (see supra n.6 and infra n.12) that that return is not a valid return for purposes of various provisions of the Internal Revenue Code. See Mendes v. Commissioner, 121 T.C. 308, 325 n.14 (2003).

regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect.  The amount of the addition is equal to 5 percent of the amount required to be shown as tax on the delinquent return for each month or fraction thereof during which the return remains delinquent up to a maximum addition of 25 percent for returns more than 4 months delinquent.  For the reasons discussed in section II, supra, we find, based upon a preponderance of the evidence, that petitioner did not file a timely 1995 return.  Therefore, unless that failure to file was due to reasonable cause and not due to willful neglect, respondent's section 6651(a) determination must be sustained.[10]

Petitioner retains the burden of proving reasonable cause for her failure to file.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Petitioner argues that she typically relied upon Mr. Quarterman to prepare and file their tax returns including, in particular, a 1995 Federal joint income tax return.  Such reliance is insufficient to establish reasonable cause for a failure to file.  "The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing under § 6651(a)(1)."  United States v. Boyle, 469 U.S. 241, 252 (1985).

---

[10]  By providing persuasive evidence of petitioner's failure to file a timely 1995 return, respondent has obviously satisfied the burden of production imposed on him by sec. 7491(c) with respect to his sec. 6651(a) determination.

Therefore, we sustain respondent's imposition of a 25-percent addition to tax under section 6651(a).[11]

## V.   Respondent's Section 6654 Determination

Section 6654 provides for an addition to tax in the event of an underpayment of a required installment of individual estimated tax.  Sec. 6654(a) and (b).  As relevant to this case, each required installment of estimated tax is equal to 25 percent of the "required annual payment", which in turn is equal to the lesser of (1) 90 percent of the tax shown on the individual's return for that year (or, if no return is filed, 90 percent of his or her tax for such year), or (2) if the individual filed a return for the immediately preceding taxable year, 100 percent of the tax shown on that return.  Sec. 6654(d)(1)(A) and (B)(i) and (ii).  The due dates of the required installments for a calendar taxable year are April 15, June 15, and September 15 of that year and January 15 of the following year.  Sec. 6654(c)(2).

Petitioner argues that the section 6654 addition to tax is "not merited in this case because there is no evidence of willful neglect and because there is evidence that petitioner is covered under safe harbor provisions of either I.R.C. § 6654 or I.R.C. § 6654(d)(1)(B)(ii) because the record indicates that petitioner

---

[11]   Even if we were to find that the 1995 Form 1040 constituted a validly filed return (which we do not), that filing occurred well beyond the 4-month period of nonfiling needed to justify respondent's imposition of a 25-percent penalty under sec. 6651(a)(1).

and her husband filed a joint return in 1994 as well as in 1996".[12]

Petitioner's argument, based upon reasonable cause and lack of willful neglect, is without merit. "Except in very limited circumstances not applicable in this case, see sec. 6654(e)(3)(B), section 6654 provides no exception for reasonable cause or lack of willful neglect." Mendes v. Commissioner, 121 T.C. 308, 323 (2003). However, because petitioner and Mr. Quarterman did file a joint return for 1994, petitioner may rely on the safe harbor provided by section 6654(d)(1)(B)(ii), which limits the amount of the "required annual payment" to "100 percent of the tax shown on" that return (i.e., petitioner's return "for the preceding taxable year").[13]

_____

[12] Petitioner apparently acknowledges that neither the safe harbor provided by sec. 6654(d)(1)(B)(i) (which provides, in part, that the "required annual payment" cannot exceed 90 percent of the tax shown on the return for the year in question) nor the exception provided by sec. 6654(e)(1) (the sec. 6654 addition to tax is not imposed if the tax shown on that return, reduced by allowable credits for withholding, is less than $500) is applicable in this case, presumably, on the ground that the 1995 Form 1040 does not constitute a valid return for purposes of either provision. We agree. See Mendes v. Commissioner, supra at 322-328 (return filed after issuance of a notice of deficiency is disregarded for purposes of computing the "required annual payment" under sec. 6654(d)(1)(B)(i)); see also Espinoza v. Commissioner, 78 T.C. at 419-420.

[13] Respondent's computation of the sec. 6654 addition to tax is based upon a "required annual payment" equal to 90 percent of the $3,390 tax due (see sec. 6654(d)(1)(B)(i)), not upon "the tax shown on" the 1994 joint return.

Exhibit 4P attached to the stipulation of facts is stipulated by the parties to be a photocopy of what petitioner contends is a retained copy of the joint income tax return filed by petitioner and Mr. Quarterman for 1994 (the retained 1994 return). That return shows a tax due of $1,585 and Federal income tax withheld of $2,373 resulting in a net overpayment (to be refunded) of $788. The parties also stipulate as follows:

> Respondent's computer records reflect that petitioner and her husband filed with respondent's Philadelphia Service Center a timely joint income tax return for the 1994 taxable year. The account indicates that they owed a tax liability of $1,721.00, received a withholding credit of $2,373.00, and were issued a refund in the amount of $652.00.

The issue we must resolve is whether it is the $1,585 tax liability reflected on the retained 1994 return or the $1,721 tax liability for 1994 reflected in respondent's "computer records" that constitutes the tax liability reflected on the 1994 joint return (the 1994 joint return liability).

We conclude that a preponderance of the evidence (which consists solely of the two stipulations and the retained 1994 return) requires a finding that the $1,585 tax liability reflected on the retained 1994 return constitutes the 1994 joint return liability. In reaching that conclusion we rely upon the following facts: (1) The stipulation with respect to respondent's computer records refers to a "tax liability" of $1,721, which may or may not be the tax liability reflected on the 1994 joint return, i.e., the $1,721 could just as easily represent the tax

liability after respondent's adjustment to the tax liability reflected on the 1994 joint return; (2) we have no reason to disbelieve petitioner's contention that the retained 1994 return is, in fact, a retained copy of the 1994 joint return, i.e., there was nothing in petitioner's demeanor during trial and there is nothing in the record to suggest that she would deliberately fabricate a return copy in order to slightly reduce an already modest ($185) addition to tax; (3) respondent failed to introduce into evidence either the filed 1994 joint return or a printout of his "computer records" of petitioner's 1994 account in order to clarify the actual amount of tax shown on the 1994 joint return. That failure gives rise to the presumption that either document, if produced, would have been unfavorable to respondent. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

Because respondent is taxing petitioner on a separate return basis for 1995, "the tax shown on" the 1994 joint return for purposes of applying the section 6654(d)(1)(B)(ii) safe harbor is the portion of the $1,585 joint tax liability for 1994 that results from multiplying $1,585 by the ratio of what would have been petitioner's separate return tax liability for 1994 to what would have been petitioner's and Mr. Quarterman's combined

separate return tax liabilities for 1994.  See sec. 1.6654-2(e)(1) and (2), <u>Example</u> (<u>1</u>), Income Tax Regs.

<u>Decision will be entered</u>

<u>under Rule 155</u>.