T.C. Memo. 1998-100

UNITED STATES TAX COURT

JOHN GALLO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20845-95.                     Filed March 11, 1998.

John Gallo, pro se.

<u>Jeffrey A. Schlei</u>, for respondent.

MEMORANDUM OPINION

NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3)[1] and Rules 180, 181, and
182.  Respondent determined a deficiency in petitioner's Federal
income tax for the taxable year 1992 in the amount of $806.  The

---

[1]  All section references are to the Internal Revenue Code
in effect for the year at issue.  All Rule references are to the
Tax Court Rules of Practice and Procedure.

sole issue for decision is whether petitioner is entitled to claim a Schedule C loss in the amount of $8,293 from his "paralegal/boat repair business" for the taxable year 1992. During these proceedings, petitioner filed a Motion to Dismiss for Respondent's Intentional Dirty Tricks, Bad Faith, and Obstructive Behavior (motion). The Court took the motion under submission at the conclusion of the trial.

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are included herein by this reference. Petitioner resided in Santa Ana, California, at the time he filed his petition.

From 1959 to 1985, petitioner earned his living primarily as a freelance boat worker/repairer. Petitioner would paint or varnish a boat, do minor engine repairs (e.g., changing the belts, sparkplugs, and pumps), transport a boat, or do just about anything a client would need. Suffice it to say that petitioner enjoyed working in the outdoors on boats. During this period, petitioner purchased a substantial number of hand tools for use in the boat repair activity. These included special fasteners and bolts, screwdrivers, wrenches, power tools, drills, and routers. In addition, petitioner purchased a bench saw, a band saw, and a drill press.

Because of a series of unrelated injuries, petitioner was forced to suspend his activities as a boat worker/repairer.

Hoping and expecting that some day he would be able to return to the business, petitioner stored his tools in a commercial facility. In 1992, the cost of the storage was $1,980. Near the end of 1993 or the beginning of 1994, petitioner disposed of the tools.

Before 1989, petitioner enrolled in Coastline Community College (Coastline) and studied in its real estate program. Petitioner earned an AA degree and a certificate in real estate. He then obtained a real estate salesman's license. In addition, he studied the escrow field and obtained an escrow certificate. Moreover, in early 1989, petitioner obtained from Coastline a certificate of achievement in legal assisting, which licensed petitioner as a paralegal. Prior to that time, petitioner was involved in a serious car accident that required substantial medical care and physical therapy.

Petitioner's physical condition was such that he was not able to accept work as a paralegal until December 1989. In 1989 and 1990, petitioner earned $220 and $8,430, respectively, working as a paralegal "temp" for an agency that placed paralegals in either temporary or permanent positions. Also in 1990, petitioner earned $2,696 as an employee of a paralegal services company that did on-site and off-site paralegal project work for various law firms and other entities. The parties have stipulated that "in 1989 and 1990, the petitioner regularly

donated paralegal services to the Coastline Community College legal clinic, where, for some work he did for them in 1990, they paid him $114.58."

In 1991 and 1992, petitioner suffered additional injuries and accidents. We will not dwell on the details of these incidents, except to note that petitioner's physical and mental conditions were such that he was incapable of working for any extended period of time without incurring substantial physical pain.

While petitioner was previously working as an employee for various agencies, he was of the opinion that he could earn income as an independent contractor by working as a paralegal out of his home, thereby creating his own work schedule. In furtherance of this plan, in 1990, petitioner acquired a legal library at a cost of $2,936.49, and a facsimile machine and supplies costing $650. In 1991, petitioner moved into a larger apartment and acquired office furniture, bookcases, computer software, a printer and copier, legal text updates for his 1990 legal library, and other items for the purpose of completing his home office for his paralegal activities.

During 1991 and 1992, petitioner did not earn any income as a paralegal primarily due to his physical incapacity. Petitioner had to turn down several opportunities because of his condition. Petitioner was under constant doctors' care, although his medical

providers generally gave a positive prognosis for his full recovery. On the Schedule C attached to petitioner's 1992 return, petitioner reported no income from his paralegal/boat repair business[2] and claimed the following expenses:

| | |
|---|---:|
| Depreciation | $1,222 |
| Office expense | 465 |
| Pension and profit sharing plans | 35 |
| Rent | 3,600 |
| Repairs and maintenance | 25 |
| Storage | 1,980 |
| Trade books | 916 |
| Paralegal association | 50 |
| Total | 8,293 |

As indicated earlier, the storage costs of $1,980 pertain to his boat activity. The $35 for pension and profit sharing plans was a maintenance fee for his Keogh plan. All of the other expenses are directly related to petitioner's paralegal activity. Petitioner has adequately substantiated the above amounts, and substantiation is not an issue in this case.

Because a possible remedy would be to dismiss this case in favor of petitioner if we were to grant petitioner's motion, we will deal with the motion first. In his motion, petitioner contends that respondent's actions with regard to petitioner's discovery request and at the "Branerton conference"[3] violated

---

[2] Petitioner's reported income was from withdrawals from an individual retirement account.

[3] Branerton Corp. v Commissioner, 61 T.C. 691 (1974), is

(continued...)

petitioner's constitutional rights of due process and equal
protection and were so egregious as to require dismissal of the
case in favor of petitioner.  Petitioner also contends that
respondent's actions in this case demonstrated persecution,
vindictiveness, and bad faith.

During these proceedings, petitioner, a 64-year-old
individual at the time of trial, was financially destitute and
the victim of a series of unfortunate incidents.  Nevertheless,
we must view the issues without regard to the special
circumstances in which petitioner finds himself.

Petitioner's complaint with regard to respondent's failure
to comply with his discovery requests stems from petitioner's
response to a conference invitation letter from respondent's
counsel dated May 6, 1997.  In respondent's letter, as "Discovery
request No. one", respondent's counsel informally requested "all
documentation, records, notes, statements, memoranda or
correspondence in your possession and any legal authority,
statutory or case law which supports your claim that you are
entitled to claim a Schedule C loss of $8,293 for the taxable
year 1992."  Discovery request No. two requested the identity of

---

[3](...continued)
the seminal case setting the requirements for informal
consultation prior to embarking on formal discovery.  See also
Rule 70.

each and every person expected to be called as a witness and the substance of his or her expected testimony.

In response thereto, petitioner agreed to a meeting and concluded his letter dated May 9, 1997, with two similar discovery requests.  Respondent failed to comply with petitioner's discovery requests.  The Court did not receive a formal request from petitioner to enforce his discovery requests.

By order dated March 17, 1997, this case was continued from the Court's trial session in Los Angeles, California, on March 17, 1997, and recalendared for June 2, 1997.

Rule 70 contains general provisions for discovery in this Court.  Rule 70(a)(2) provides, in part: "Discovery shall not be commenced, without leave of the Court, before the expiration of 30 days after joinder of issue * * * and shall be completed, unless otherwise authorized by the Court, no later than 45 days prior to the date set for call of the case from a trial calendar."  Rule 72(a) provides that "Any party may, without leave of Court, serve on any other party a request to" produce documents.  Rule 72(b), however, provides, in part:  "The party upon whom the request is served shall serve a written response within 30 days after service of the request.  The Court may allow a shorter or longer time."  Rule 72(b) further provides:

> To obtain a ruling on an objection by the responding party, on a failure to respond, or on a failure to produce or permit inspection, the requesting party shall file an appropriate motion with the Court and

shall annex thereto the request, with proof of service on the other party, together with the response and objections if any.  Prior to moving for such a ruling, neither the request nor the response shall be filed with the Court.

If we assume that petitioner's discovery request is a request for production of documents, from the above it can readily be seen that petitioner's informal discovery request was commenced less than 30 days prior to trial and could not possibly have been completed "no later than 45 days prior to the date set for call of the case from a trial calendar."  Rule 70(a)(2).  Moreover, petitioner failed to file an appropriate request for review of respondent's failure to respond in accordance with Rule 72(b).  Petitioner merely complained about it.  Accordingly, petitioner's unsuccessful discovery request is not grounds to grant his motion and sanction respondent.  The fact that respondent made an equally unenforceable informal discovery request, with which petitioner attempted to comply, is irrelevant.

As indicated in respondent's informal discovery request, petitioner was requested to bring numerous documents.  In attempting to comply with this request, petitioner assembled two boxes of records, one of which he painfully carried from the parking lot at respondent's office building to the conference.  Petitioner complains that respondent failed to look at any of the documents he had brought.  Notwithstanding respondent's rejected

offer to carry the box back to petitioner's car, petitioner then incurred great pain and aggravation returning to his car with the box. We do not believe that this vignette requires us to sanction respondent's counsel.

Finally, petitioner characterizes respondent's actions as demonstrating obstructionism, vindictiveness, and general bad faith. Considering respondent's motion to dismiss for lack of jurisdiction on the grounds of an untimely filed petition, subsequently denied, respondent's motion to dismiss for lack of prosecution upon petitioner's failure to appear at the original call of this case on March 6, 1997, and the aforementioned problems with discovery and the "Branerton" conference, petitioner characterizes himself as a victim due to his penury and physical and mental impairments, and, as such, prays that the case be dismissed. Each of the incidents of which petitioner complains was not by itself irregular, and they have only become heightened in combination by reason of petitioner's particular situation. We do not ascribe any vindictiveness or bad faith to respondent's individual actions, which had, at each time, some justification. Accordingly, we find no grounds to grant petitioner's motion, and it shall be denied.

We now turn to the merits of this case. Section 162 allows deductions for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or

business.  As a threshold matter, this section requires that a taxpayer incur the expenses in "carrying on" a trade or business. Sec. 162(a).  Whether petitioner is engaged in a trade or business and the nature of that trade or business are questions of fact.  Ford v. Commissioner, 56 T.C. 1300, 1307 (1971), affd. per curiam 487 F.2d 1025 (9th Cir. 1973).  The temporary cessation of a trade or business does not preclude a finding that a taxpayer was carrying on a trade or business during the period of cessation.  Haft v. Commissioner, 40 T.C. 2, 6 (1963).  Thus, even an unemployed taxpayer may be considered to be carrying on a trade or business if the taxpayer was previously involved in and intended to return to a particular trade or business.  Id.  In order to take advantage of what is described as the "hiatus principle", a taxpayer must show that during the hiatus he intended to resume the same trade or business.  See Estate of Rockefeller v. Commissioner, 762 F.2d 264, 270 (2d Cir. 1985) (citing Sherman v. Commissioner, T.C. Memo. 1977-301), affg. 83 T.C. 368 (1984).  In Haft v. Commissioner, supra at 6, we stated as follows:

> Plainly, petitioner did not cease to be in the costume jewelry business in 1957 and 1958 merely because he temporarily had no merchandise to sell.  It was a period of transition in which he was actively seeking another connection that would enable him to continue to serve the same customers with whom he had previously dealt.  We think that the respondent's position that petitioner was not carrying on a trade or business in these circumstances gives an unduly narrow interpretation to the statute.  His failure to make

sales in 1958 by reason of his temporary lack of access to a source of costume jewelry to sell is not controlling. * * *

The present case involves petitioner's claim for deductions for expenses from two separate activities, boat repair and paralegal work. Petitioner was engaged in the boat repair business from 1959 through 1985 during which he accumulated a substantial number of tools and supplies. In 1992, petitioner incurred expenses for storage for these tools and supplies. After 1985, petitioner did not perform boat repairs and did not earn any income from that activity. As the years passed, it became less and less likely that petitioner would ever return to that activity or that his services would be desired by boat owners or previous clients. There is no indication in the record that petitioner maintained contact with his former clients in this regard.

On the other hand, petitioner, after 1985, sought other means of earning a living. He obtained his paralegal certificate in 1989 and attempted to obtain employment. Beginning in December 1989, he was successful through 1990, earning in excess of $10,000 from that activity. All earnings from the paralegal activity were as an employee. However, it became clear that because of his physical infirmities, he would be unable to handle the time restraints required of an employee, but he honestly and sincerely believed that he could still function and earn money as

a paralegal as an independent contractor out of his home.  In accordance with his belief, petitioner set up his home office with the necessary research materials and equipment.  During 1991 and 1992, while petitioner did not derive income from his paralegal skills, he was hopeful that he was on the road to recovery based upon the representations of his medical providers.

Clearly the activities of a boat repair person and a paralegal are separate and distinct.  It is not logical that these two activities be combined as one trade or business on one Schedule C.  Accordingly, we hold that the income and expenses for each activity should be treated separately.  We further hold that petitioner, in 1992, realistically had no likelihood of reentering the boat repair field.  His maintenance of the tools, some of which were monogrammed, was more for sentimental reasons than for business potential.  Consequently, in 1992, he was no longer in hiatus from that activity and thus no longer "carrying on" that trade or business.  Accordingly, petitioner is not entitled to deduct the storage expense incurred for his boat supplies and tools.

On the other hand, petitioner was in hiatus from earning his living as a paralegal.  Indeed, the actions he took in 1991 and 1992 to bolster his opportunities and abilities to earn a living from that profession support this conclusion.  Respondent's contentions that petitioner was merely in a startup phase of his

independent contractor business pertains only to the form of the activity and not its substance. Having been engaged in the paralegal business as an employee, see Primuth v. Commissioner, 54 T.C. 374, 377 (1970), petitioner did not change the general nature of his business activities by working out of his home office. Therefore, we conclude that petitioner, in 1992, was carrying on a trade or business as a paralegal and is entitled to deduct all of the other expenses at issue, with the exception of the two following items.

The first item is the claimed expenses for $3,600 for a portion of the rent associated with petitioner's residential premises. As applicable herein, section 280A provides that no deduction shall be allowed with regard to the use of residential property of the taxpayer. Some exceptions are provided in section 280A(c). However, section 280A(c)(5) clearly provides that no deduction shall be allowable in excess of the income derived from such use. In other words, no deduction for use of a residential unit can be taken if said deduction gives rise to a loss. Accordingly, even though petitioner's use of his residence may have qualified as one of the exceptions under section 280A(c)(1) through (4), section 280A(c)(5) disallows the claimed rental expense deduction, as petitioner had no paralegal income for 1992.

Moreover, it is irrelevant whether petitioner claims the deduction under section 212 if it is not allowable under section 162. It is well established that a taxpayer is not entitled to a home office expense deduction for a section 212 activity that does not rise to the level of a trade or business within the meaning of section 162. Moller v. United States, 721 F.2d 810, 813 (Fed. Cir. 1983); Curphey v. Commissioner, 73 T.C. 766, 770 (1980).

The second item, petitioner's expenditure of $35 for maintenance of his Keogh plan, would not be an expense of carrying on petitioner's paralegal activity but would be deductible under section 212 as a Schedule A itemized deduction. See Rev. Rul. 84-146, 1984-2 C.B. 61.

In his reply brief, petitioner alleges that if the Court sustains the disallowance of some of the claimed expenses, he has additional unclaimed expenses as an offset. Attached to the reply brief were copies of numerous documents which were not offered at trial. Petitioner contends that he is entitled to claim the additional expenses under Rule 155. Petitioner is wrong. The time for presenting evidence is at trial. Generally, the Court does not try a case piecemeal. New issues may not be raised after the trial has been concluded and the record closed. Moreover, evidence may not be submitted or attached to posttrial

briefs.  Petitioner's claim for additional expense deductions is, therefore, denied.

<u>An order will be issued denying petitioner's motion, and decision will be entered under Rule 155</u>.