T.C. Summary Opinion 2008-149

UNITED STATES TAX COURT

DAVID PETER AND PAMELA OGDEN CWIKLO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11381-06S.          Filed November 24, 2008.

David Peter and Pamela Ogden Cwiklo, pro sese.

<u>Linette B. Angelastro</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Pursuant to section
7463(b), the decision to be entered is not reviewable by any
other court, and this opinion shall not be treated as precedent
for any other case.  Unless otherwise indicated, subsequent
section references are to the Internal Revenue Code in effect for

the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $20,987.79 deficiency in petitioners' Federal Alternative Minimum Tax (AMT) for 2002, as well as a $6,555.91 addition to tax under section 6651(a)(1) for failure to file timely. At trial petitioners filed a "Motion to Strike IRS Documentary Evidence for Failure to Produce" (motion to strike). In the motion petitioners also requested that the Court award attorney's fees and other costs of litigation. The issues for decision are: (1) Whether the Court should sustain petitioners' motion to strike; (2) whether petitioners are subject to the AMT; and (3) whether petitioners are liable for an addition to tax for late filing.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in California when they filed their petition.[1]

Petitioners filed a joint 2002 Federal income tax return. Mr. Cwiklo was a self-employed attorney, and Ms. Cwiklo worked as a teacher's aide. They reported adjusted gross income of $322,559, itemized deductions of $125,798, an income tax

---

[1] Only Mr. Cwiklo appeared at trial; however, for consistency, we will continue to refer to petitioners in the plural.

liability of $46,479, tax withheld of $14, and a balance due of $46,465.

Petitioners claimed four categories of itemized deductions: State and local taxes of $25,291, personal property taxes of $3,200, home mortgage interest of $33,758, and a miscellaneous itemized expense item entitled "Ref Fees" of $70,000.[2] Petitioners failed to phase out (reduce) their itemized deductions and personal exemptions as sections 68(a)(1) and 151(d)(3), respectively, require for higher income taxpayers.[3] Petitioners also failed to report AMT, and they did not attach a Form 6251, Alternative Minimum Tax--Individuals, to their joint income tax return. In the notice of deficiency dated April 24, 2006, respondent's AMT calculation reflected adjustments for the proper phaseout amounts.

Both parties presented copies of petitioners' 2002 tax return, and both copies showed that petitioners dated their signatures April 15, 2003. However, respondent's copy also showed that the Internal Revenue Service (IRS) Small Business/Self Employed compliance office in Santa Barbara, California, stamped the return received on July 7, 2005. In

---

[2] Neither party explained what "Ref Fees" means. Petitioners properly reduced the $70,000 to $63,549 because sec. 67(a) requires taxpayers to trim miscellaneous itemized expenses by 2 percent of adjusted gross income.

[3] For detail on the phaseouts, see table footnotes below in sec. III, the AMT computation.

their petition, petitioners alleged that respondent incorrectly calculated or incorrectly applied the AMT; that respondent mistakenly did not apply AMT credits; and that respondent did not support the addition to tax for late filing. Petitioners also stated that they would raise additional issues at trial.

The trial session of the Court commenced Monday, October 15, 2007, in Los Angeles, and the trial took place on that date. Petitioners filed their motion to strike. In the motion petitioners stated that respondent's computation must have been wrong because petitioners did not have any tax preference items, and even if respondent's computation was correct, then respondent misapplied the tax because originally, in 1969, Congress targeted 155 high-income taxpayers and did not intend to impose the tax on petitioners. Petitioners introduced three new grounds for relief: (1) Respondent made the determination of AMT tax too late; i.e., respondent issued the notice of deficiency beyond the 3-year limitations period to assess tax; (2) respondent purportedly conceded that petitioners did not owe AMT; and (3) respondent did not respond timely to petitioners' discovery requests.

To support their contention about discovery, petitioners attached five letters to their motion. The first letter, dated August 17, 2007, was from respondent to petitioners, suggesting a pretrial conference and requesting that petitioners bring all

documents that they intended to introduce at trial.  The second letter, dated September 13, 2007, was from petitioners to respondent, stating that respondent already had originals or copies of all the documents that petitioners intended to introduce, such as their 2002 tax return.  Petitioners requested that in lieu of a face-to-face conference respondent send to Mr. Cwiklo's law office all documents that respondent intended to introduce at trial.

The third letter, dated September 28, 2007, was from respondent to petitioners.  Respondent stated that it was his understanding that at trial petitioners intended to introduce only their tax return to support their contention that they were not liable for AMT.  Petitioners highlighted this statement as respondent's purported concession that they did not owe the tax.  Respondent also stated that he was enclosing a copy of petitioners' administrative file for 2002 after redacting irrelevant third party information and certain privileged data, such as petitioners' DIF score (discriminant function, which is an internal IRS statistical measure of the likelihood an audit will yield additional revenue).  Additionally, respondent stated that except for a transcript of petitioners' account for 2002 he did not intend to introduce any documents that he had not already sent to petitioners.

Both the fourth and fifth letters, dated October 3 and October 9, 2007, were from petitioners to respondent. Petitioners reiterated respondent's alleged concession on the AMT. Petitioners also stated that because they had not received the entire administrative file, they intended to ask the Court for an order precluding respondent's introduction of any documents that respondent had not produced timely. The Court reserved judgment on petitioners' motion.

At trial respondent offered the following documents: (1) A copy of petitioners' 2002 tax return; (2) a Form 4340, Certificate of Assessments, Payments, and Other Specific Matters (referred to below as the Certificate of Assessments or transcript of account), dated October 3, 2007; and (3) a Form 2866, Certificate of Official Record, also dated October 3, 2007. The transcript of account indicated that the IRS received the return on July 7, 2005. The Certificate of Official Record had an official IRS raised gold seal affixed to it, and the IRS Chief of Accounting Operations had signed the certificate.

In the stipulation of facts and at trial petitioners objected to the Court's admission of the tax return and the Certificate of Assessments on the grounds of hearsay, lack of foundation, and the best evidence rule. The Court overruled petitioners' objections and received respondent's evidence.

## Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners have neither alleged that section 7491(a) applies nor established their compliance with the requirements of section 7491(a)(2)(A) and (B) to substantiate items, maintain records, and cooperate fully with respondent's reasonable requests. Petitioners therefore bear the burden of proof. With respect to the addition to tax, section 7491(c) places the burden of production on the Commissioner.

Petitioners have constructed three layers of defense against respondent's determination. First, they claim that the IRS issued the notice of deficiency too late. In petitioners' view, because the IRS issued the notice more than 3 years after the date petitioners claim they filed their return, the statute of limitations renders the IRS's notice invalid, and therefore, the IRS has no authority to determine a deficiency and an addition to tax. Secondly, petitioners propose two reasons for the Court to exclude respondent's evidence: respondent's purported discovery misconduct, and petitioners' evidentiary objections to the

evidence.  Third and last, petitioners allege the AMT should not apply to them, and in the alternative, if it does, then respondent must have incorrectly computed the amount due and omitted credits.  We now discuss petitioners' three defenses.

I.  Whether the Statute of Limitations Bars Respondent's
    Determination of AMT

Establishing that a deadline has expired under a limitations period is an affirmative defense that the claiming party must raise in the pleadings.  See Rule 39; Hoffman v. Commissioner, 119 T.C. 140, 146 (2002).  Additionally, taxpayers must specify in their petition each and every error that they allege the Commissioner has committed.  Rule 34(b)(4); Funk v. Commissioner, 123 T.C. 213, 215 (2004).  If a taxpayer does not raise an issue in the pleadings, then the Court will deem that the taxpayer has conceded, waived, or abandoned the issue.  See Rule 34(b)(4); Tapper v. Commissioner, 766 F.2d 401, 403 (9th Cir. 1985).  Petitioners first raised the statute of limitations argument in their motion to strike filed at trial.  Consequently, Rule 34(b)(4) precludes their argument as untimely, and we deem that petitioners have waived the defense.

Moreover, if we were to reach the merits, we would find that petitioners failed to carry their affirmative burden to prove that the 3-year period for assessment expired before respondent's issuance of the notice of deficiency.  Petitioners contend that respondent's notice of deficiency is invalid because the date of

issuance, April 24, 2006, is more than 3 years after they purportedly filed their return on April 15, 2003.  Three years is significant because the Commissioner has 3 years from the date a taxpayer files a return to assess a tax imposed by title 26.[4] Sec. 6501(a); see United States v. Galletti, 541 U.S. 114, 116 (2004).

We note that "A long line of cases has established that the running of the statute of limitations on assessment requires the taxpayer to prove the date of the filing of a return." Espinoza v. Commissioner, 78 T.C. 412, 421 (1982).  Further, a court is not required to give credence to a taxpayer who does not present the testimony of a spouse who purportedly cosigned the return and who does not present any other evidence to corroborate the taxpayer's self-serving testimony.  Hazel v. Commissioner, T.C. Memo. 2008-134.  Other than the date they wrote on the tax return and Mr. Cwiklo's self-serving testimony, petitioners provided no evidence to support their claim that they filed their return on April 15, 2003.  Petitioners did not call Ms. Cwiklo, and they did not offer proof of mailing, such as a certified mail receipt or an executed return receipt request.  Thus, petitioners have failed to meet their affirmative burden.

---

[4]Title 26 of the U.S. Code includes imposition of the AMT at sec. 55.

In contrast, respondent produced a copy of petitioners' tax return that showed an IRS receipt stamp date of July 7, 2005, and an authenticated Certificate of Assessments that corroborated the July 7, 2005, filing date. Accordingly, respondent has provided credible evidence of the July 7, 2005, filing date.

For the foregoing reasons, we conclude that petitioners filed their return on July 7, 2005, and that the statute of limitations did not bar respondent's issuance of a notice of deficiency on April 24, 2006.

## II. Whether the Court Should Exclude Respondent's Evidence

We now discuss petitioners' two grounds for the Court to exclude respondent's evidence: Respondent's alleged wrongdoings during pretrial discovery, and petitioners' evidentiary objections at trial.

### A. Whether the Court Should Sustain Petitioners' Motion To Strike

At trial petitioners filed a motion to strike. Their motion hinges on their contention that respondent did not respond sufficiently and timely to their discovery requests for documents. Petitioners submitted their first discovery request to respondent in a letter dated September 13, 2007, which was about 32 days before the October 15, 2007, calendar call and trial.

Petitioners' use of discovery suffers from many problems. First, as a formal matter, petitioners submitted their initial

discovery request too late. Our Rules require that a party requesting information make the request sufficiently early so as to complete discovery no later than 45 days before the date set for the calendar call of the case. See Rule 70(a)(2); Gallo v. Commissioner, T.C. Memo. 1998-100. Further, if petitioners were having a problem with respondent's response, then our Rules require them to follow Rule 72, which controls the "Production of Documents and Things". In pertinent part, Rule 72(b) requires that the requesting party file with the Court a motion to compel if the responding party fails to respond or produce. When coupled with Rule 70(a)(2), Rule 72 requires that the requesting party file the motion to compel early enough for the Court to weigh the motion and, if necessary, compel the other party to comply sufficiently early before trial, or to adjourn the trial for a later date. Petitioners, by filing an untimely motion to strike and by bypassing the filing of a motion to compel, have violated our discovery Rules.

Secondly, petitioners' greater mistake was that they did not "in good faith [exhaust] all efforts toward informal communication and discovery within the meaning of Rules 70 and 90, and Branerton Corp. v. Commissioner, 61 T.C. 691 (1974)." Pleier v. Commissioner, T.C. Memo. 1990-426, affd. without published opinion 956 F.2d 1167 (9th Cir. 1992). Failure to do so shows petitioners do "not fully appreciate the importance of

our <u>Branerton</u> opinion." <u>Schneider Interests, L.P. v. Commissioner</u>, 119 T.C. 151, 156 (2002). "In <u>Branerton</u> * * *, we explained: 'The [formal] discovery procedures should be used only after the parties have made reasonable informal efforts to obtain needed information voluntarily'." <u>Id.</u> at 154 (quoting <u>Branerton Corp. v. Commissioner</u>, 61 T.C. 691, 692 (1974)). An insistence on "compliance with his formal discovery requests in advance of any conference between the parties does not effectively present an opportunity for the 'discussion, deliberation, and an interchange of ideas, thoughts, and opinions between the parties' that our Rules contemplate." <u>Id.</u> at 156 (quoting <u>Intl. Air Conditioning Corp. v. Commissioner</u>, 67 T.C. 89, 93 (1976)). Thus, petitioners' violation of the "letter and spirit of * * * [our] discovery rules * * * sharply conflicts with the intent and purpose of Rule 70(a)(1) and [therefore] constitutes an abuse of the Court's procedures." <u>Branerton Corp. v. Commissioner</u>, <u>supra</u> at 692.

Petitioners rejected respondent's offer to begin informal discussions and discovery through a pretrial settlement conference that respondent proposed in his August 17, 2007, "<u>Branerton</u>" letter. Moreover, petitioners compounded their error by making discovery demands that seemingly were meant to obstruct rather than yield meaningful information. See <u>Pleier v. Commissioner</u>, <u>supra</u> (ruling against a taxpayer, in part because

the taxpayer's overbroad discovery requests would not lead to the discovery of admissible evidence).  Ultimately, other than sending their letters, petitioners did not engage in "'discussion, deliberation, and an interchange of ideas, thoughts, and opinions between the parties'" as Rule 70(a)(1) contemplates.  Schneider Interests, L.P. v. Commissioner, supra at 154 (quoting Intl. Air Conditioning Corp. v. Commissioner, supra at 93).

Third and finally, in addition to procedural errors, petitioners' motion fails on the merits.  The limited information that respondent redacted, which was some third party information and petitioners' DIF score, was within respondent's rights and immaterial to petitioners' trial.  See Rule 70(b)(1) (a discovery request may not secure information that is privileged or that is not relevant to the pending case); Gillin v. IRS, 980 F.2d 819, 822 (1st Cir. 1992) (holding that among other allowable exclusions, the Commissioner may redact a taxpayer's DIF score).  Moreover, the only new evidence respondent presented at trial was a transcript of petitioners' account, which, for the reasons we discuss next in section B, did not surprise or prejudice petitioners.

For all the foregoing reasons, we will deny petitioners' motion to strike.

B.  Whether the Court Should Have Sustained Petitioners'
    Evidentiary Objections

In general, the Court conducts trials in accordance with the rules of evidence for trials without a jury in the U.S. District Court for the District of Columbia, and accordingly, follows the Federal Rules of Evidence.  Sec. 7453; Rule 143(a); Clough v. Commissioner, 119 T.C. 183, 188 (2002).  However, Rule 174(b) carves out an exception for trials of small tax cases under the provisions of section 7463(a).  Under Rule 174(b), the Court conducts small tax cases as informally as possible and consequently may admit any evidence that the Court deems to have probative value.  Schwartz v. Commissioner, 128 T.C. 6, 7 (2007). The documents that respondent offered are highly probative of petitioners' filing date.  Therefore, sufficient grounds exist under Rule 174(b) to overrule petitioners' evidentiary objections.

Petitioners' arguments also fail substantively.  Certified computer records to establish information regarding a taxpayer's filing of income tax returns are admissible as self-authenticating documents under rule 902(1) of the Federal Rules of Evidence.  United States v. Ryan, 969 F.2d 238, 240 (7th Cir. 1992); Hughes v. United States, 953 F.2d 531, 540 (9th Cir. 1992).  The significance of self-authentication is that the document does not require extrinsic evidence of authenticity as a prior condition to admission.  Fed. R. Evid. 902.  Computer

records satisfy rule 902(1) of the Federal Rules of Evidence as long as the certification is under seal and bears an appropriate signature.  Hughes v. United States, supra at 540.

Further and specifically, the Certificate of Assessments is neither inadmissible hearsay evidence nor inadmissible for lack of foundation.  Id. at 539-540.  Rather, the Certificate of Assessments is admissible under the public records exception of rule 803(8) of the Federal Rules of Evidence because it is "'the product of systematized data storage and retrieval by a public agency charged with the responsibility of maintaining accurate financial and tax information'".  Hughes v. United States, supra at 540 (quoting United States v. Neff, 615 F.2d 1235, 1241-1242 (9th Cir. 1980)).

In United States v. Ryan, supra at 239, as happened here, the Commissioner waited until trial to present an IRS computer-generated transcript, which the District Court allowed over the taxpayer's objection.  The taxpayer contended that he did not have sufficient time to decipher the codes on the Commissioner's printout.  Id.  The Court of Appeals for the Seventh Circuit concluded that the transcript was admissible even though the Commissioner did not present the transcript until trial because the Commissioner relied on the transcript solely to establish the taxpayer's filing history and therefore the untimely production did not prejudice the taxpayer.  Id.  Similarly, respondent's

purpose in offering the two documents, the tax return and the Certificate of Assessments, was to establish that petitioners filed their return late.  Moreover, petitioners may not justifiably argue that they were surprised by respondent's evidence at trial because respondent's notice of deficiency dated April 24, 2006, gave petitioners about a year and a half notice of respondent's position regarding AMT and late filing.

Rule 1002 of the Federal Rules of Evidence codifies the best evidence rule by requiring the original of a document.  However, rule 1003 of the Federal Rules of Evidence generally permits duplicates unless a party raises a genuine question as to the original's authenticity, and unless it would be unfair to admit the duplicate.  Major v. Commissioner, T.C. Memo. 2005-141, affd. 224 Fed. Appx. 686 (9th Cir. 2007).  Tax Court Rule 143(d) adopted the unfairness standard.  Id.  Petitioners, other than their assertion of rule 1002 of the Federal Rules of Evidence, offered no reason why respondent's copy of their tax return was not satisfactory.

For all of the foregoing reasons, petitioners' evidentiary objections fail.  One additional point:  if the Court were to sustain petitioners' objections, then the record would have no credible evidence that petitioners ever filed a return.  The period of limitations does not commence where a taxpayer has not filed a return; or in other words, in the case of no return, the

Commissioner may assess a tax at any time. See sec. 6501(c)(3); Commissioner v. Lane-Wells Co., 321 U.S. 219, 224 (1944).

III. Whether Respondent Improperly Imposed or Computed the AMT

We now review petitioners' three arguments why they are not liable for the AMT.

A. Whether Congress Intended To Impose the AMT on Petitioners

Petitioners claim that Congress intended to impose the AMT on only a small number of high-income taxpayers and not on petitioners. Courts have consistently rejected such challenges. Badaracco v. Commissioner, 464 U.S. 386, 398 (1984) (a court may not rewrite a tax statute to its liking); Katz v. Commissioner, T.C. Memo. 2004-97 (specifically discusses AMT statute).

B. Whether Respondent Conceded That Petitioners Do Not Owe AMT

Petitioners rely on respondent's letter dated September 13, 2007, to argue that respondent conceded that they do not owe AMT. Petitioners have taken respondent's words out of context. In the letter, respondent was simply summarizing petitioners' assertion that the AMT did not apply. Respondent did not concede the issue. Petitioners' contention is groundless.

C. Whether Respondent Improperly Computed the AMT

Petitioners argue further that even if all their procedural and equitable arguments fail, which they do, then petitioners are still not liable for AMT because: (1) Petitioners do not have

preference items, (2) respondent incorrectly computed the tax, and (3) respondent did not apply credits. Petitioners were silent, however, on where respondent erred or which credits respondent omitted. We now therefore review respondent's AMT calculation.

The computation of AMT is a two-step process, with step 1 beginning with determining the taxpayer's Alternative Minimum Taxable Income (AMTI). AMTI starts with the taxpayer's regular taxable income before the deduction for personal exemptions.[5] Section 55(b)(2)(A) increases or decreases that income by the adjustments provided in section 56. For example, relevant adjustments include disallowances (addbacks) of deductions for State and local income taxes, personal property taxes, and miscellaneous itemized deductions. See sec. 56(b)(1)(A). To arrive at the final AMTI, section 55(b)(2)(B) increases the above amount with the tax preference items described in section 57. Petitioners are correct that they had no tax preference items. However, their income and adjustments were sufficient to subject them to the AMT, as the computation below shows.

Step 2 starts with determining a "taxable excess", which is the amount that the AMTI (determined by the provisions discussed above) exceeds the AMT exemption amount. Sec. 55(b)(1)(A)(ii).

---

[5]In other words, sec. 56(b)(1)(E) disallows the deduction for personal exemptions that taxpayers claim under sec. 151 for their regular income tax.

For 2002, section 55(d)(1)(A) provided an AMT exemption of $49,000 for married couples filing a joint return, with a phaseout if a couple's income exceeded $150,000.  The AMT rate for married couples was 26 percent of the taxable excess up to $175,000 and 28 percent thereafter.  See sec. 55(b)(1)(A)(i).  Section 55(a) then defines or imposes the AMT as the excess of the "tentative minimum tax" over the "regular tax".  In other words, the AMT is the amount in excess of, and is in addition to, any regular tax owed.

If we apply the above provisions to petitioners' facts, the following computation shows the calculation of AMT relevant here:

| Step 1 - Alternative Minimum Taxable Income | | |
|---|---|---|
| Regular taxable income before exemptions (Form 1040, line 39) | | [1]$202,319 |
| Adjustments: | | |
| State and local taxes | $25,291 | |
| Personal property taxes | 3,200 | |
| Miscellaneous itemized deductions: (Ref Fees) | 63,549 | |
| Limitation of itemized deductions for AGI > $137,300 | 5,558 | |
| Total adjustments | | 86,482 |
| Subtotal | | 288,801 |
| Plus: Items of tax preference (none here) | | 0 |
| Alternative minimum taxable income | | 288,801 |

[1]Petitioners on line 39 of Form 1040, U.S. Individual Income Tax Return, incorrectly reported a lower taxable income figure of $196,761, which is $5,558 less than the proper amount.  The reason for the shortfall is that on Schedule A, Itemized Deductions, petitioners in error checked the box on line 28 as "No" when the form asked whether their adjusted gross income (AGI) was greater than $137,300.  Petitioners' AGI was $322,559.  The reason for the query is that sec. 68(a)(1), subject to certain limitations, phases out (reduces) itemized deductions at the

rate of 3 percent of AGI above $137,300.  The phaseout amount here is 3 percent x $185,259 (322,559-137,300) = $5,558.

Step 2 - Alternative Minimum Tax

| | | |
|---|---|---|
| Alternative minimum taxable income (from above) | 288,801 | |
| Less: AMT Exemption | | |
| 2002 AMT exemption amount | $49,000 | |
| Less: Phaseout | | |
| Petitioners' AMTI (from above) | 288,801 | |
| Less: Threshold amount | 150,000 | |
| Subtotal | 138,801 | |
| x Phaseout rate | x 25% | |
| Phaseout amount | 34,700 | |
| Net AMT exemption | | 14,300 |
| Taxable excess | | 274,501 |
| Apply AMT rates | | |
| First 175,000 | 175,000 | |
| x rate | x 26% | |
| | 45,500 | |
| Remainder (274,501-175,000) | 99,501 | |
| x rate | x 28% | |
| | 27,860 | |
| Tentative minimum tax | | 73,360 |
| Less: Regular tax | | [2]52,373 |
| Alternative minimum tax | | 20,987 |

[2]Petitioners incorrectly reported a lower total regular tax of $46,479.  The $5,894 shortfall occurred because:  (1) Petitioners did not report the phaseout of $5,558 of their itemized deductions, as we discussed earlier, and (2) petitioners also did not report the phaseout of their personal exemptions that sec. 151(d)(3) requires for married couples with an adjusted gross income greater than (in 2002) $206,000.  Petitioners claimed $12,000 in personal exemptions: $3,000 per person times four exemptions, which included two children.  The proper phaseout amount should have been $11,280, which would leave a correct deduction of $720.  The combination of the two omissions, $17,174 (5,894 + 11,280), when incorporated into the regular tax calculation, results in a proper regular tax total of $52,373.

The Code also provides for AMT credits, such as the section 59(a) AMT foreign tax credit.  However, as noted above,

petitioners have not identified which credits they believe they may claim or that respondent omitted, and we do not find any applicable credits. Thus, in summary, we have reviewed respondent's computations of the AMT and credits and conclude that they comport with the Code. In view of the foregoing, we hold that respondent's determination of AMT is correct.

IV.  Whether Respondent Properly Satisfied His Burden of Production With Regard to the Addition to Tax

Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed for filing, unless the taxpayer proves that the failure to file was due to reasonable cause and not willful neglect. United States v. Boyle, 469 U.S. 241, 245 (1985). The addition equals 5 percent of the tax required to be shown on the return if the failure to file is not for more than 1 month. See sec. 6651(a)(1). An additional 5 percent is imposed for each month or fraction thereof in which the failure to file continues, to a maximum of 25 percent of the tax. Id. Section 6651(b) imposes the addition to tax on the net amount due.

As discussed above, respondent has provided credible evidence that petitioners filed their return on July 7, 2005, which is beyond the April 15, 2003 (or August 15, 2003, with an extension), deadline for filing a 2002 return. Thus, respondent has carried his burden of producing evidence to show the addition to tax for late filing is appropriate. Although the Commissioner

has the initial burden, taxpayers bear the burden to show reasonable cause. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Petitioners failed to provide credible evidence that they filed their return timely; and moreover, they failed to show or even argue that they exercised ordinary care and prudence in their late filing. We therefore conclude that pursuant to section 6651(a)(1), petitioners are liable for the addition to tax for late filing.

V. Conclusion

In reaching our holdings, we have considered all of petitioners' remaining arguments and contentions; and to the extent not mentioned, we conclude that they are irrelevant or without merit.

To reflect our disposition of the issues,

An appropriate order and decision will be entered.